INDIANA SERVICE CORPORATION *v.* TOWN OF
WARREN ET AL.

[No. 26,437.   Filed March 28, 1934.]

*Franklin W. Plummer, Howard E. Plummer, James M. Barrett, Jr., Phil M. McNagny,* and *Leigh I. Hunt,* for appellant.

*Pappenhuser, Johnston, Thompson & Cole, Ashcraft & Ashcraft, Carroll J. Lord, Gemmill, Brown & Campbell,* and *Walter S. Brent,* for appellees.

*Matson, Ross, McCord & Clifford, Frederick E. Matson,* and *Harry T. Ice,* amici curiae.

MYERS, J.—This was a suit by appellant against appellees to enjoin the latter from carrying out a contract entered into by the appellee Town of Warren with appellee Fairbanks, Morse & Co., and to compel the latter to refund to the Town of Warren any sum of money paid to it on account of the contract. The two-paragraph amended complaint covers eleven printed pages of appellant's brief. Each of these paragraphs was answered by a general denial. Trial, finding, and judgment for appellees. Appellant's motion for a new trial was overruled, and this ruling is the only error assigned.

We will not take the space necessary for a substantial statement of the complaint or of the evidence introduced at the trial, other than to say, that for about 18 years prior to March, 1925, the Town of Warren owned and operated its own water-works and electric light plants and was engaged in furnishing water and electric energy by means of its distribution systems to the town for municipal purposes and to the inhabitants thereof for domestic, commercial, and industrial purposes. At that time its steam power plant had become inefficient and obsolete, and for that reason it entered into a five-year contract with appellant, beginning March 1, 1925, whereby it purchased from appellant

electric energy which it resold and delivered to its customers through its distribution system. On March 5, 1929, appellee, having accumulated in its water and light fund about $29,000 in cash, decided to rehabilitate its power plant by installing Diesel oil engines. Thereupon the town board, in regular session, by unanimous vote, suspended the rules, passed and adopted Ordinance No. 36, which authorized the acceptance of the proposal of Fairbanks, Morse & Co. to install certain engines and equipment in appellee's power house, appropriated the money to pay for the same, and authorized the execution of a contract with Fairbanks, Morse & Co. for the purchase of the engines and equipment at a fixed price of $42,846, $4,000 of which to be paid on execution of the contract, $4,000 on arrival of the engines, and $2,000 upon completion of installation and acceptance of equipment, the remaining sum, $32,846, to be paid in equal monthly installments of $547.44 with interest, evidenced by sixty pledge orders, each of which contained the following provisions: "This is not a general obligation to the Town of Warren, Indiana, but a special obligation payable only from the net revenue of the Town's light and water plant." "It is agreed that the obligation to pay the deferred installments of said purchase price and said pledge orders issued in evidence thereof is not a general obligation of the said Municipality payable from taxes or its general funds but only a special obligation payable from the net revenues of the light and water plant of the Municipality. 'Net revenues' shall be deemed to represent the balance of the gross receipts of the Municipality's light and water plant after the payment solely of the legitimate and necessary expenses of the operation of the plant." The contract purports to obligate the Town of Warren to maintain rates for the service of the plant sufficient to provide revenue for the payments called for

by the contract, so far as the law will permit; to operate the plant as a municipal plant until all obligations under this contract have been fully paid; not to dispose of the plant in any manner so as to deprive Fairbanks, Morse & Co. of its title to or interest in the machinery or equipment without providing for the payment to the company of all amounts then unpaid under the contract. At the same session of the Town Board, Ordinance No. 37 was unanimously passed, providing for the payment of interest on the pledge orders, and appropriating "a sufficient amount of said funds" for such purpose.

All of the questions relied on by appellant in the instant appeal presented by the record of which we have given a brief synopsis, were considered and decided against appellant's contentions in the case of *Underwood* v. *Fairbanks, Morse & Company* (1933), 205 Ind. 316, 185 N. E. 118, and on the authority of that case those questions may be considered at rest.

The present appeal presents the additional question based on the alleged failure of the Board of Trustees of the Town of Warren to comply with §249 of the Cities and Towns (Acts 1905, p. 383, as amended, Acts 1915, p. 689; §11129, Burns 1926, §48-7201, Burns 1933, §12720, Baldwin's 1934), by passing a resolution declaring a necessity for entering upon the policy of acquiring electric light works or water works, or both, and the submission of such declaratory resolution to the qualified voters of the town at a special or general election for approval or rejection. This statute provides that "Any city or town may erect or construct water works, gas works, electric light works, heating, steam and power plants, or combination of such utilities, together with all buildings, lines and accessories necessary thereto, and may purchase or lease any such works and utilities already constructed, or in course of construc-

tion, and owned by any other persons; . . . Provided, That before any city or town shall enter upon the policy of erecting and constructing any such new works and utilities, or the purchase of the same from other persons . . . the board of trustees of such town . . . shall adopt a resolution, designated by number, declaring the necessity for entering upon the policy of such erection and construction or purchase. In case of the proposed erection and construction of new works, said declaratory resolution shall fix the general character and probable maximum cost thereof. . . . Before such declaratory resolution is confirmed and the policy thereof entered upon, said common council or board of trustees shall submit the same to the qualified voters of such city or town, at a special or general election," for approval or disapproval of such resolution.

In connection with the foregoing statute on the subject of municipal utilities, it may be well to notice the powers given to the board of town trustees. In that respect we are at present interested only in §31, Cls. 3 and 13, Acts 1905, p. 219; §11277, Burns 1926, §48-301, Burns 1933, §12764, Baldwin's 1934. Among other things it is provided (Cl. 3) that the board of town trustees shall have power "to construct, purchase and preserve . . . reservoirs, wells, pumps and other water works for supplying such town with water for fire protection and other purposes and to regulate the use thereof and to levy taxes or issue bonds, etc." Cl. 13. "To contract for lighting the streets and other public grounds of the town, with gas, electricity, or other suitable light: Provided, however, That the board of trustees, by a two-thirds vote of all their number, may, at a special meeting of the board called for that purpose (notice of the meeting; how given) cause to be constructed at the expense of the town an electric light

plant or a gas plant for the purpose of furnishing public, commercial and domestic lights for such town."

A brief reference to former legislation on the subject of municipal ownership of water and electric light plants in this state may serve some useful purpose in determining the answer to the question in the instant case.

As early as 1852, the General Assembly enacted what was known as the "Towns Act" (ch. 108, R. S. 1852, p. 482, §22, Cl. 3) giving to the board of trustees of an incorporated town power "to construct and preserve reservoirs, wells, pumps, and other water-works, and to regulate the use thereof." Section 27 of that act prohibited such towns from incurring any debt or liability "unless the citizen owners of five-eighths of the taxable property of such town, as evidenced by the assessment roll of the preceding year, petition the board of trustees to contract such debt or loan."

In 1879 (Acts 1879, p. 88) the legislature required the board of trustees of towns having less than 45,000 population, which included the town of Warren, to first decide by ordinance or resolution to erect water works or make extensions or improvements of water works theretofore constructed, and for that purpose they were authorized to sell bonds to pay for the same: Provided, that such town trustees "contemplating building water works under this act, shall, before actually embarking therein, submit the question to the qualified voters thereof at a special or general election. . . . Such election may be ordered upon a petition of one hundred free-holders and resident taxpayers of such city or incorporated town, and in no case shall the common council of any city, or town trustees of any incorporated town, erect water works except upon a majority of all the votes cast at such election, upon the said question of water works as provided for in this act." It will be

noticed that the election required by this act was to determine the question of whether or not the board should "erect water works" and not the question of whether the board should make extensions or improvements to its already owned plant, as in the instant case. This is the first statute providing for an election to determine upon the municipal ownership of public utilities.

In 1833 (ch. 70, Acts 1883, p. 85) the board of trustees of all incorporated towns were given the power to light the streets, alleys and other public places of the town with electric lights and to contract with any individual or corporation for such lighting. They were authorized by resolution or ordinance to provide for the erection and maintenance in the streets, alleys, and other public places poles and other equipment necessary for that purpose. While the General Assembly in 1893 (ch. 100, Acts 1893, p. 185, §11) were of the opinion that prior to that time incorporated towns were not authorized to own electric light plants, yet it will be observed that by ch. 70, *supra,* they were authorized to light and to encumber the streets, etc., with poles, cross-arms, wires, etc. Therefore, it seems to us that by such contemplated public lighting it would naturally follow that such towns were authorized to do such other acts and things necessary and incident to give effect to the power granted, and hence to be reasonably regarded as the first step in statutory authorization of municipal ownership of electric light plants by towns for the lighting of their streets, etc. In this act there is no provision for an election or petition or other action on the part of anyone except the board of trustees by "resolution or ordinance" to proceed with the work, unless the cost of such improvement would exceed the two per cent debt limit.

The 1893 act, *supra,* authorized the board of town trustees, on petition of a majority of the voters, as shown

by the number of votes cast at the last preceding corporation election for officers of the town, under certain conditions not material to the instant case, were required to construct at the expense of the town an electric light plant for the purpose of furnishing public, commercial, and domestic electric lights. Notwithstanding this petition which may be considered as taking the place of an election, by §5 of the act the board of trustees was prohibited from letting the contract and required to reject the petition in case the bid for the erection of the "plant shall exceed more than two per cent of the taxable value of said town as embraced in the tax duplicate" for that current year, after subtracting from the amount of such bid any money in the treasury which could be applied to the contract. However, this result could be avoided by a money donation to the town sufficient "to reduce the sum to be paid from the town treasury" below the two per cent of such tax duplicate. Section 6 authorized a bond issue not exceeding the contract price. Section 10. In case the plant is constructed and the demand thereafter for lights exceeds the capacity of the plant, the board of trustees were authorized to increase the capacity thereof so as to supply such demand. Under this statute the only preliminary question for the board to decide before acting to increase the capacity of an accomplished plant was that the demand for lights was greater than the plant would supply. The necessity for the enlargement of the plant or the preliminary steps to a contract therefor was not made to depend upon an election or petition of taxpayers, or otherwise than the sound business judgment of its board of trustees.

The foregoing summary of legislation on the question of municipal ownership shows that from 1852 to 1879 towns were given express statutory power to acquire, own, and operate water works and gas works. From 1879, as to water works, and from 1893, as to electric

light plants, until 1905, towns were required to hold an election before erecting or constructing such works, but not before making extensions or improvements on works already owned. In 1905 (ch. 129, Acts 1905, p. 219) the General Assembly passed a codified general law relating to cities and towns. This codification, with amendments and supplementary acts thereto, in force at the time the contract here in question was executed, defined the powers and procedure to be followed by cities and towns. Section 31, cls. 3 and 13, empowered town trustees to construct water works and electric light plants, and §249 provided that in case the town should determine to erect any or all of such public utilities, or to make any extensions or improvements thereto, it must first submit the question to its qualified voters at a special or general election. In 1911 (ch. 229, Acts 1911, p. 561, §2) the General Assembly rewrote §249, which, with a slight amendment in 1915, *supra*, comprises the statute, a synopsis of which is hereinabove set forth, and the one which appellant asserts was not followed by the town of Warren, and for that reason the contract here in question is void.

In our opinion, the evident purpose of the General Assembly in 1911, in rewriting §249, *supra*, was to change its provisions so as to make it no longer necessary, in case of town-owned water or electric light plants, to submit the question of extensions, changes, and improvements thereto to the voters at a special or general election, as was required by the original text of the act. Applying this conclusion to the facts of the instant case, it appears that for many years prior to March, 1925, the town of Warren had been operating water works and an electric light plant, both public utilities, and was so operating them at the time the contract here in suit was executed. It is true that from March, 1925, to March, 1930, it purchased electricity from

appellant for power and for resale to its customers, but that transaction alone would not make it any the less a utility operator, for, as we have seen, during all of that time and for many years prior thereto, it was continuously in possession, control, and had the business management of both plants. Whether, under the statute, a town may adopt municipal ownership of utilities seems to be a question of policy to be determined by an election. But, having once entered into the business, as here shown, an election is not necessary for the purpose of deciding an engineering choice as to the type of equipment that shall be originally installed, or for necessary replacements because of inefficiency or obsoleteness. The board of trustees of the town must, of necessity, be and they are authorized to exercise a business discretion in the management, operation and maintenance of the utility entrusted to their care. These are affirmative duties resting upon town boards, and to that end they may do the things necessary to accomplish a complete performance of the several items of the plant in order to render to the public the service contemplated when the utility was acquired.

Whether the town of Warren followed the statutory procedure in entering upon the policy of municipal ownership in the first instance is not questioned, nor, in our opinion, is such question material in this case, since the only question involved 'is the replacement of admitted inefficient and obsolete parts of a completely organized utility. We therefore hold that the record at bar fails to disclose reversible error.

Judgment affirmed.