UNDERWOOD ET AL. *v.* FAIRBANKS, MORSE & COMPANY ET AL.

[No. 25,929. Filed March 29, 1933. Rehearing denied June 29, 1933.]

*Fraser & Isham,* for appellants.
*Ashcraft & Ashcraft, Carroll J. Lord, Sammons &*

*Sammons, John R. Browne* and *Gemill, Browne & Campbell*, for appellees.

HUGHES, J.—This is an action brought by appellants, as taxpayers of the town of Oxford, Indiana, against the appellees, Fairbanks, Morse & Company, and the Town of Oxford, Indiana, to set aside a contract entered into between said appellees.

By this contract the appellee, Fairbanks, Morse & Company, attempted to sell to the appellee town, certain engines, pumps, generators, and appliances and to install the same in the existing municipal light and water plant owned by said town, for the sum of $6,000 in cash and the said town agreed to issue to its co-appellee $36,006.00 in pledge orders, payable in sixty (60) equal installments of $600.10 each, in payment of the residue of the purchase price thereof.

The appellee town, at the time of entering into said contract, owned a municipal light and water plant which it had operated at a profit for many years. Said plant, immediately before the execution of said contract, was of the fair value of $50,000.00, and for the last four or five years had been earning a net income of $3,000 to $4,000 per year.

The contract was entered into on the 29th day of January, 1929. The taxables of said town amounted at said time to $812,025.00.

The entire net earnings of said plant, including the original plant then owned by the town and said new machinery sold to the town was pledged to the payment of said pledge orders.

The engines sold were Diesel engines and said contract contemplated the removal of the present steam engines and boilers in said plant and their replacement by the new Diesel engines. Certain new pumps, electric generators, machinery and appliances to supplement or replace certain of the old machinery then owned

by the town in said plant was to be furnished to the town under said contract.

The buildings housing the present plant were to be used to house the new additions to the plant. The existing wells, water mains, pipes, poles, wires, transformers and the like were not to be materially affected by the new supplies furnished and installed under the terms of said contract.

The court, by request, made a special finding of the facts and stated its conclusions of the law thereon.

The errors assigned and relied upon for reversal are as follows: (1) That the court erred in each conclusion of law; (2) that the court erred in overruling appellant's motion for a new trial.

We will set out the substance of some of the special findings of the facts as we deem necessary.

Finding No. 1 found that the plaintiffs were taxpayers, residents and citizens of the town of Oxford; that Oxford is and was an incorporated town; and that the defendant, Fairbanks, Morse & Company, is a corporation organized under the laws of Illinois.

Finding No. 2 found that for some years prior to October 8, 1928, that the town of Oxford was the owner and was operating a light and water plant and was selling light and water to said town and its inhabitants; that said plant was then being operated by steam power by means of two engines, one having been installed in 1902, and the other in 1914; by two boilers, one of which was installed in 1902, and the other in 1911; by generators installed in 1902 and 1914 and by other machinery and equipment installed at different times since 1902; that on October 8, 1928, and thereafter, one of said boilers was in a dangerous condition; that said plant at said time was not in proper condition and it would have cost the town at least $10,000 to $12,000 or more to have repaired said plant and put in proper condition;

that said plant was not of sufficient capacity to furnish said town and its inhabitants with an adequate supply of electric energy and water.

Finding No. 4 found that on January 28, 1929, there was cash in the water and light sinking fund of said town in the sum of $17,000, all of which had been derived from the operation of said plant and was then and there available for the use of said town in either repairing said plant or replacing with new machinery; that no part of said fund was derived from taxation; that the average net earnings of said plant was between $3,000 and $4,000 per year, and such earnings were deposited in and kept with said light and water and sinking funds as a part thereof.

Finding No. 5 found that the net taxable valuation of the property of said town for the year 1928 was $870,-365; for the year 1929 it was $812,025; and for the year 1927 it was $975,525.

Finding No. 6 found that on January 28, 1929, the board of trustees of Oxford met and passed ordinances for the execution of a contract with Fairbanks, Morse & Company for the sale and installation of Diesel engines, machinery and equipment to replace like units of the old machinery.

Finding No. 7 found that an ordinance was passed on January 28, 1929, directing and authorizing a contract to be entered into with Fairbanks, Morse & Company for the equipment specified in the proposal of said company and directing and authorizing the president of the board of trustees to execute and deliver pledge orders to said company in accordance with its proposal upon the completion of the installation of the equipment purchased; that the treasurer of the town or custodian of the funds be directed and authorized to pay to said company $3,000 upon the arrival of the engines and $3,000 upon the installation of the equipment.

Finding No. 8 found that on January 28, 1929, the board of trustees passed and adopted an ordinance relating to the payment of said pledge orders; that the town was to pay Fairbanks, Morse & Company the sum of $42,006 for the equipment, which includes interest. Said ordinance provided that all money received by the municipality for services for light and water shall be deposited in a separate or special fund; that the municipality shall pay the legitimate and necessary expense of the operation of said plant from the special fund and then they shall pay the company from said fund $600.10 each 30 days until the purchase price of the equipment is paid for.

Finding No. 10 found that on January 28, 1929, the board of trustees of Oxford passed and adopted an ordinance appropriating the funds from the municipal light and water revenue to be used in the improvement, renewal and extension of the water and light utilities of said town and in payment for the same, section 3 of said ordinance being as follows: "Now, therefore, the sum of $42,006 be and the same is hereby set aside from the net revenues of the said municipal utilities and the said net revenues shall be set aside and applied monthly until the said sum is fully retired in the said manner. The net revenues shall be deemed to represent the balance of the pass receipt of the said light and water plant after the payment solely of the legitimate and necessary expenses of the operation of said plant, being operated in an efficient and economical manner." Section 4 provides, "That the town is in immediate and urgent need of the said improvements, renewal and extension."

Finding No. 11 found that on January 29, 1929, the town of Oxford entered into a written contract with Fairbanks, Morse & Co. for the purchase and complete installation of certain Diesel engines and other ma-

chinery. The contract, among other things, provides: "The municipality covenants to operate said plant in an efficient and economical manner, and to maintain rates for the purchase or service of said plant which will produce sufficient revenue to provide for the payments called for by this contract so far as it may be permitted to do so by law. That the title and ownership of the machinery shall remain in the company until final payment thereof has been made. That the said town shall pay the company the sum of $3,000 upon the arrival of engines and $3,000 upon the completion of installation. $36,006 shall be paid by the town to the company in equal installments of $600.10 to be evidenced by sixty pledge orders. That each of the pledge orders shall contain the following paragraph: "This is not a general obligation of the town of Oxford, Indiana, but a special obligation payable only from the net revenues of the town's light and water plant."

Finding No. 12 found that prior to the execution of the contract the town of Oxford did not give or publish any notice to bidders of its intention to purchase the engines, machinery, and equipment and that said contract was executed without competitive bidding; that, prior to the execution of said contract, neither said town nor said company filed a verified statement with the Public Service Commission of Indiana relating to the pledge orders described in said contract or relating to said contract, and the Public Service Commission of Indiana has not at any time made any orders relating to the same.

Finding No. 13 found that no part of said engines and equipment has ever been shipped or installed in said plant and none of the pledge orders have ever been issued by said town.

Finding No. 14 found that on January 28 and 29, 1929, the said water and light plant owned by Oxford,

was worth $50,000 and the only water and light plant in said town.

Finding No. 15 found that if said contract is carried out, the town of Oxford will play from the sinking fund the sum of $6,000; that said sinking fund represents the net earnings of the operation of said water and electric light plant owned by the said town of Oxford.

Finding No. 17 found that on August 1, 1902, the Oxford Water Company of Oxford was the only water plant in the town of Oxford, Indiana, and that it has issued bonds in the sum of $24,000, maturing from year to year up to, and including, the year 1932; that said bonds were secured by a first mortgage upon all the lands and easements, buildings, machinery, pipes, mains, and conduits, and of the contracts, rights, privileges and franchises, and of the rents, issues, incomes and profits then held, or thereafter to be acquired by said company, including all water rentals to be paid to said town of Oxford, which mortgage or deed of trust had been executed by said Oxford Water Company, to the Royal Trust Company of Chicago, and recorded; that on the 28th and 29th days of January, 1929, there remained unpaid of said mortgage on said water and light plant the sum of $6,500, due thereafter in the years 1929, 1930, 1931, and 1932.

Upon the special finding of facts, the Court concludes the law to be as follows:

"First: That the law is with the defendants.

"Second: That the plaintiff should recover nothing by this action.

"Third: That the sum of six thousand five hundred dollars to become due in the years 1929, 1930, 1931, and 1932, being the unpaid balances of the bonds issued by the Oxford Water Company and assumed by the Town of Oxford, Indiana, and set out in Finding No. 17, was on the 28th and 29th days of January, 1929, a debt of

the town of Oxford, within the meaning of Article 13 of the Constitution of the State of Indiana.

"Fourth: That the Pledge Orders referred to in the findings herein and provided for in the contract set out in Finding No. 11, if issued as provided in said contract, would not constitute such debt of the town of Oxford, Indiana, as is meant by Article 13 of the Constitution of the State of Indiana.

"Fifth: That the contract set out in Finding No. 11 is not against public policy.

"Sixth: That the defendant should recover of the plaintiffs herein judgment for their costs in this action."

The appellants took proper exception to the conclusions of law and filed a motion for a new trial, for the reasons: (1) that the decision of the court is not sustained by sufficient evidence; (2) that the finding of the court is not sustained by sufficient evidence; (3) that the decision is contrary to law; and (4) that the finding of the court is contrary to law. The motion for new trial was overruled.

The errors assigned and relied upon for reversal are: (1) that the court erred in each conclusion of law; (2) that the court erred in overruling appellants' motion for a new trial.

We will first consider the question as to whether or not municipal indebtedness was created by the contract in question, in violation of Article 13, of the Constitution of Indiana.

There can be no question as to the right and authority of the town of Oxford to enter into such a contract as is here presented. Such authority is found in Section 11277, Burns 1926, under subdivisions 2, 3, 6, 13, and 20. And regardless of statutory authority, the town of Oxford had the implied and inherent power to enter into such a contract. *The City of Crawfordsville* v. *Braden* (1892), 130

Ind. 149, 28 N. E. 849, 14 L. R. A. 268, 30 Am. St. Rep. 214; *Cooper* v. *Town of Middletown* (1914), 56 Ind. App. 374, 105 N. E. 393; *Rushville Gas Co.* v. *The City of Rushville* (1889), 121 Ind. 206, 23 N. E. 72, 6 L. R. A. 315, 16 Am. St. Rep. 388. The court, in the case of *Rockebrandt* v. *City of Madison* (1893), 9 Ind. App. 227, 36 N. E. 444, 53 Am. St. Rep. 348, said: "The corporation (meaning the city) possessing the power, as it does, either to contract with other corporations or individuals, for the lighting of its streets, or to own and operate a plant of its own for that purpose, has the power, also, to purchase all the materials and employ all the labor necessary for carrying it on. The right to purchase such materials and employ the required labor is a matter exclusively within the sphere of its general discretionary powers, and is not subject to judicial intervention or control, except in cases of fraud or when it is shown that such power or discretion is being grossly abused to the detriment or oppression of the public rights or interests. Upon this principle, a contract made by a city, which does not show on its face that it is oppressive, will not be overthrown by the courts, unless fraud is shown in its making or object."

It must be conceded to be the law that unless restricted by law, even without statutory authority, towns may provide light and water for public purposes. These may be furnished as the town wishes it to be done. It may be done by contract or the town may, in its inherent right, erect and maintain plants for this purpose. As was said by the court in the case of *Town of Gosport* v. *Pritchard* (1901) 156 Ind. 400, 59 N. E. 1058, 1060: "It is the law in this State that the expense of light and water is essential to the maintenance of corporate existence." The court further stated in this case that "the power of municipal corporations to contract for the lighting of streets is

purely a business power, and is discretionary. Discretionary powers vested in such corporations are not subject to judicial control, except in cases where fraud is shown, or the discretion is grossly abused, to the oppression of the citizen."

Regardless of the power to enter into such a contract as we have before us, if it creates an indebtedness of the town of Oxford in violation of Article 13 of the Constitution of Indiana, then the contract is void.

This proposition must be, and is, admitted by the appellee. It must also be conceded, from the special finding of facts, if the pledge orders are to be an indebtedness of the town of Oxford, then the contract would be void, for the reason that the maximum debt that could have been incurred on January 29, 1929, was $20,740.50, and the pledge orders amounted to $36,006.

The trial court in its special Finding No. 4 found that on January 28, 1929, there was cash in the water and light, and sinking funds of said town of approximately $17,000; that all of it had been derived from the operation of said light and water plant and was available for the use of said town in either repairing said plant, or replacing the machinery with new machinery. That no part of said funds was derived from taxation. Six thousand dollars of the purchase price as fixed in the contract was to be paid out of the seventeen thousand dollars.

It has been held that "obligations payable out of a particular fund, and for which the fund only, and not the municipality is liable are not within the inhibition of Article 13." *City of LaPorte* v. *Gamewell Co.* (1896), 146 Ind. 466, 45 N. E. 588, 35 L. R. A. 686, 58 Am. St. Rep. 359; *Quill* v. *City of Indianapolis* (1891), 124 Ind. 292, 23 N. E. 788, 7 L. R. A. 681. If, as a matter of fact there had been in the water, light and sinking fund more money than the contract price called

for then in that event the whole amount could have been taken out of this fund, and the transaction would not have been within the inhibition of the Constitution according to the above authorities and many more that might be cited.

The contract in question, among other things, provides: "It is understood and agreed by and between the parties hereto that each pledge order as herein before mentioned shall contain the following paragraph: 'This is not a general obligation of the town of Oxford, Indiana, but a special obligation payable only from the net revenues of the town's light and water plant.'" So it is evident to our mind that the deferred installments as evidenced by the pledge orders are not obligations of the town and can not be payable from the taxes or the general funds of said town. They can only be paid from "the net revenues of the town's light and water plant."

It is the contention of appellants that the pledge orders pledge the entire net income of the present municipal plant, together with the additions made to the machinery under the contract, and virtually amounts to a mortgage upon the plant itself, long owned by the town, for the sum of $36,006, and by placing such a mortgage upon property now owned by the town constitutes a debt against the town within the meaning of Article 13 of our Constitution. We can not so construe the contract. The ordinance and the contract both provide that the pledge orders are to be paid from a special fund. It is specifically provided in the contract "that the obligation to pay the deferred installments of the purchase price, and said pledge orders issued in evidence thereof is not a general obligation of the said municipality payable from taxes, or its general funds, but only a special obligation payable from the net revenues of the light and water plant of the municipality." And it is further provided and agreed to by

and between the parties that each pledge order shall contain the following paragraph: "This is not a general obligation of the town of Oxford, Indiana, but a special obligation payable only from the net revenues of the town's light and water plant."

The appellants cite the case of *City of Joliet* v. *Alexander* (1902), 194 Ill. 457, 62 N. E. 861, to sustain their contention. This case is entirely different from the instant case. In that case the certificates to be issued were to be secured by a mortgage or deed of trust on the water works system and appurtenances then owned by the city, and also on the extensions constructed under the ordinance, together with all the lands, buildings, machinery and appurtenances of every kind and description in connection therewith. And the question before the court in that case was whether or not the issuing of the certificates, secured by a mortgage on the existing system and extension, would create a debt of the city. The court held that "the provision for a mortgage implies a debt, since a mortgage can not exit without a debt. The debt or obligation secured by it, and which is an essential element in a mortgage. . . . The city owns an existing system of water works, with its lands, buildings, machinery and appurtenances; and the ordinance provides for mortgaging that system to secure the certificates under the act providing for a foreclosure and sale, by which the city would be deprived of its property for a term of years, not exceeding 50." There is no such question involved in the instant case. Moreover that part of the case of the *City of Joliet* v. *Alexander, supra,* upon which the appellants lay special stress has been overruled in the later case of *Ward* v. *City of Chicago* (1930), 342 Ill. 167, 173 N. E. 810, 812. The court in this case said: "Counsel for appellant in the present case lay considerable stress upon certain language of the opinion *(City of Joliet* v.

*Alexander, supra)* to the effect that indebtedness within such constitutional prohibition may be created by pledging an existing income of the city, arguing that in the present case there can be no way of determining how much income would be attributable to the enlargement of the system when made or how much would be attributable to the new rates to be put into effect; that the so-called new income can not be segregated from the present income; that the present income will be taken away and lost: and that so cutting off and pledging it will create an indebtedness within the meaning of the language invoked. The position thus taken seems to be that pledging the water fund creates indebtedness within the constitutional prohibition unless the pledge is confined to such precise income as can be directly traced to the particular new physical element of the plant to pay for which the obligation secured was issued, leaving the original income in effect intact and usable by the city for other purposes altogether. The Decatur case *(Maffit* v. *City of Decatur* [1926], 322 Ill. 82, 152 N. E. 602) is decisive against the soundness of such a position. There the income from the original plant was in effect cut off and lumped into the sum resulting from the operation of the plant as enlarged. It is not apparent that any effort was there made to preserve such original income intact or exempt it in any manner or degree from the claim of the water company, or that moneys made available to the water company under the contract were at all limited to income traceable to the elements of the plant which it had financed."

The appellant cites the case of *Fox* v. *City of Bicknell* (1923), 193 Ind. 537 141 N. E. 222, and relies on that part of the opinion which is taken from the *City of Joliet* v. *Alexander, supra,* but as this case has been virtually overruled, by the case of *Ward* v. *City of*

*Chicago, supra,* the case of *Fox* v. *Bicknell, supra,* does not sustain appellant's contention. But on the other hand it does, in our judgment, sustain the position of the appellee. That case says: "The City of Bicknell is not agreeing to pay any money raised by taxation and is not pledging or mortgaging any property it already has, nor is it pledging income or revenues from any source except the plant. Hence, there is no legal or moral obligation on the part of the city to pay, its only duty being to manage the plant, and take care of the fund. This being true the rules laid down in cases like *Quill* v. *City of Indianapolis, supra,* regarding special assessments for street improvements, are applicable so far as the subject of indebtedness is concerned."

We conclude that the contract in controversy does not, and the pledge orders to be issued will not create indebtedness of the town of Oxford, Indiana, in violation of Article 13 of the Constitution of Indiana, and in support of said conclusion we wish to cite, in addition to the foregoing cases, the following: *City of Bowling Green* v. *Kirby* (1927), 220 Ky. 839, 205 S. W. 1004; *Carr* v. *Fenstermacher* (1929), 119 Neb. 172, 228 N. W. 114; *Barnes* v. *Lehi City* (1929), 74 Utah 321, 279 Pac. 878; *Johnson* v. *City of Stuart* (1929), (Iowa) 226 N. W. 164; *Lang* v. *City of Cavalier* (1930), 59 N. D. 75, 228 N. W. 819; Vol. 1 Pub. Utilities by Pond (4th Ed) Sec. 102, where authorities are collected.

The appellants further contend that the contract is void, because it was executed without notice and advertising for bids. We have carefully considered and examined all of the sections contained in Burns R. S. 1926, and referred to by appellants, and also the authorities cited, but we do not find that any of the references sustain the contention of appellants.

Unless restricted by law, and in the absence of fraud

or abuse of discretion, a town may enter into a contract in any manner it wishes to adopt, and, hence, it would not be against public policy because the contract was let without notice and competitive bidding. In the case of *Crowder* v. *Town of Sullivan* (1891), 128 Ind. 486, 28 N. E. 94, 13 L. R. A. 647, it is said: "The statute confers upon municipal corporations authority to contract for electric lights, and does not require that notice should be given inviting proposals, nor does it require notice in any form. . . . As the mode of making contracts is committed to the discretion of the municipal authorities, and they are not required to give notice, a contract may be awarded without giving notice. . . . If the municipality were endeavoring to levy a specific assessment upon individuals or upon private property, then notice would be required upon general principles; but there is no such attempt here, for the entire compensation is to be paid from the corporate treasury. There is a clear and important difference between cases where a debt is created payable out of general corporate revenues and cases where special assessments are laid upon property."

We quite agree with the appellants that it would have been the wise and prudent course for the town in the instant case to have given notice and asked for competitive bidding, but, under the law as we find it, this was not necessary. McQuillon Mun. Corp. (2nd) Sec. 1288, p. 862; *Lee* v. *City of Ames* (1925), 199 Iowa 1342, 203 N. W. 790.

The Appellants further contend that the Appellees failed to comply with the provisions of the Shively Utility Commission Act, and by reason thereof the contract is void. It is their contention that before entering into the contract in question the approval of the Public Service Commission was necessary. We do not so construe the provisions of the

Public Service Commission Act. Section 90 of this Act, and the same being Section 12761, Burns 1926, provides that: "A public utility, as defined in Section 1 of this act, may, with the approval of the commission, issue stock, certificates of stock, bonds, notes, or other evidence of indebtedness payable at periods of more than twelve months after the date thereof, when necessary for the acquisition of property, the construction, completion, extension or improvement of its facilities. . . .

Section 91, being Section 12762, Burns 1926, of said act, provides that: "Whenever a public utility desires to issue stocks, certificates of stock, bonds, notes, or other evidences of indebtedness, payable in more than one year from date . . . it shall file with the commission a statement, verified by its president and secretary, . . . setting forth (a) the amount and character of the securities proposed to be issued, (b) the purpose for which they are to be issued, (c) the description and estimated value of any property to be acquired through the said issue, (d) the amount of cash to be received for said securities, (e) the financial condition of the public utility and its previous operations so far as relevant. For the purpose of enabling it to determine whether the proposed issue complies with the provisions of this act, the commission shall make such inquiry, or investigation, hold such hearing, and examine such witnesses, books, papers, documents or contracts, as it may deem of importance in enabling it to reach a determination."

We do not believe that the provisions as set out in the foregoing sections of the act in any way contemplates that the approval of the Commission must be first had before the municipality enters into a contract such as we have in the instant case. Section 90 of the act says that: "A public utility may, with the approval of the commission issue stock, certificates of stock, bonds,

notes, or other evidences of indebtedness." In the instant case the pledge orders are the evidences of the indebtedness and not the contract. The town of Oxford had the right to make the contract. The Public Service Commission had no power to do so; neither did it have the power to prevent the making of the contract. It is expressly provided in the contract that: "All deferred payments are to be evidenced, by pledge orders of the municipality, payable to the order of the company, dated and delivered as of the date of completion of installation, and shall bear interest from maturity at the rate of 6% per annum." So it is clearly seen that the pledge orders, which are the evidences of indebtedness, will not be issued until the date of installation of the engines and machinery and not until that time comes, if at all, is it necessary for the municipality to comply with the provisions of the Public Service Commission Act, relative to securing the approval of the act in issuing stock, bonds, notes, or other evidences of indebtedness and in filing its verified statement, all as provided in Sections 90 and 91 of said act. When an application for leave to issue stock, bonds, and other evidence of indebtedness has been filed then for the purpose of enabling the commission to determine whether the proposed issue complies with the provisions of the Act it may consider the contract in enabling it to reach a determination, but it is not necessary to secure the approval of the contract prior to the time of entering into the same.

The case of *Bell* v. *City of Fayette* (1930), 325 Mo. 75, 28 S. W. (2nd) 356, 363, is very similar to the instant case, and the court, in speaking of the powers of the Public Service Commission, said: "It can neither make contracts nor interfere with contracts which the city makes with persons or corporations. A municipality does not have to consult the Public Service Commis-

sion every time it makes some improvement in a service plant, any more than it has to consult it, when it contracts for repairs on its machinery."

Appellants also rely upon Section 95 (§12767, Burns 1926) of the Public Service Commission Act in upholding their contention in this case. Said section provides: "No public utility, as defined by section 1 of this act, shall sell, assign, transfer, lease, or encumber its franchise, works or system to any other person, partnership or corporation, without the approval of the Commission after hearing." It is not contended by appellants that the town of Oxford has sold, assigned, transferred, or leased its water and light plant, but it is insisted that it has *encumbered* the same by pledging the net revenue of the present municipal plant to the payment of the pledge orders. We can not so construe the word encumber. The word "encumber" ordinarily means "to charge, or burden with financial obligations or mortgages." There is no question of a mortgage involved and the pledge orders, when issued, will not be a lien on the plant, and the holders of the pledge orders can not look to the plant for payment, for each pledge order, when issued, shall contain the following language: "This is not a general obligation of the town of Oxford, Indiana, but a special obligation payable only from the net revenues of the town's light and water plant," and in this sense the net revenues may be encumbered, but this certainly does not have any relation to section 95 of the act, wherein it is said: "No public utility . . . shall . . . encumber its franchise, works or system to any other persons, . . ."

The next and last proposition contended for by appellants is that the contract was executed through the fraud of the appellee company. We have carefully reviewed the evidence on this proposition. The burden was upon the appellants to prove

fraud. The trial court found against appellants on this question and we concur in the result.

Judgment affirmed.