THE LETZ MANUFACTURING COMPANY ET AL. *v.* THE PUBLIC SERVICE COMMISSION OF INDIANA.

[No. 26,618. Filed October 20, 1936.]

*A. E. Letsinger, Herbert T. Johnson,* and *George E. Hershman,* for appellants.

*Philip Lutz, Jr.,* Attorney-General, *Urban C. Stover,* Deputy Attorney-General, *E. Miles Norton,* and *Herbert J. Patrick,* Special Assistant Attorney-General, for appellee.

TREMAIN, J.—The common council of the city of Crown Point, Indiana, adopted resolutions and made orders for the purpose of filing, and did file, with the Public Service Commission of Indiana a petition for permission to issue certain waterworks revenue bonds, pursuant to the provisions of Chapter 155 of the Acts of 1929 as amended by Chapter 254 of the Acts of 1933. The public service commission authorized the issuance of water-works revenue bonds in the sum of $98,000, and granted permission to the city to make additions, improvements, and replacements to its municipally owned water-works plant, and to contract therefor. The authorization was granted by the commission on March 12, 1935.

The appellants filed this action in the circuit court of Lake County against the appellee under the provisions of Chapter 169 of the Acts of 1929, Burns' Ind. St. 1933, §54-429 et seq., §13993 et seq., Baldwin's 1934, to set aside, vacate, and enjoin the enforcement of the order of the public service commission upon the ground that the same was insufficient, unreasonable, and unlawful. Upon a trial of the issue in the circuit court, a finding was made and judgment was entered in favor of the appellee. Appellants' motion for a new trial, based upon the ground that the decision of the court was contrary to law and was not sustained by sufficient evidence, was overruled, from which ruling this appeal was perfected.

Since the record was filed in this court, the appellee filed its motion to dismiss the appeal upon the grounds: (1) That the appellants' brief does not comply with the sixth subdivision of Rule 21, and (2) that the questions presented, or attempted to be presented, have become moot as between the parties for the reason that since the circuit court entered its judgment on May 31, 1935, in favor of the appellee, the city of Crown Point duly issued and sold water-works revenue bonds in the amount of $98,000, being the bonds which the public service commission granted permission to be issued and sold. Therefore, the appellee contends the question is moot.

The appellants insist that in their complaint filed in the circuit court of Lake County, several questions of importance were presented and ruled upon by the court adversely to appellant's contention, including: (a) The right of the city to construct a water-works plant and to make improvements and additions thereto; (b) the right or authority of the city to sell water-works revenue bonds for the erection and construction of addi-

tions and improvements to the water-works system, and to include as a part thereof a Diesel engine and other machinery for the purpose of generating electrical energy; (c) the authority of the city to provide that the funds derived from the operation of the water-works system, set aside for the operation and maintenance, shall be used in payment of encumbrances thereon; (d) questioning the constitutionality of several Acts involved in this proceeding.

It is true that appellant's brief does not discuss separately under "Propositions and Authorities" the grounds specified in the motion for a new trial. All questions are embodied in one general presentation, which is not to be commended, but the alleged errors, that the decision of the court is contrary to law and not sustained by sufficient evidence, are frequently discussed by lawyers as one question. They are presented in appellants' brief in such manner that the court can readily understand and apply the points discussed.

If the sole question involved were the issuance and sale of the water-works revenue bonds, the situation might be viewed as being moot at this time, but other questions, as above indicated, were in issue upon which error has been predicated, and are presented for review in this court. The attack upon the constitutionality of the statutes authorizing the issuance and sale of water-works revenue bonds is of such importance that the appeal should not be dismissed unless no other course of action could be taken by this court.

The appellants assert that the city cannot provide for extensions and additions to a water-works system which it owns and operates, unless the same is unencumbered as provided by Chapter 259 of the Acts of 1933, Burns' Ind. St. 1933, §48-5441, §12414, Baldwin's 1934. This section provides:

"Any city of the fifth class owning and operating unencumbered water-works supplying such city, . . . may provide for extension and additions . . . and for the issuance of bonds payable from the revenue and receipts of such waterworks for said extensions and additions in the manner prescribed in this act."

Appellants claim that the record shows that the water-works plant of the city of Crown Point was encumbered at the time of the trial to the extent of $15,509, being an amount due Fairbanks, Morse & Co. for a Diesel engine unit. Both the public service commission and the circuit court found against the appellants upon this proposition. The facts show that the city had prior thereto purchased a Diesel engine engine unit from Fairbanks, Morse & Co. under a contract payable solely from the income and revenue derived from the operation of the plant, but the debt was not in any manner an encumbrance upon the plant itself. This particular question was discussed in *Underwood* v. *Fairbanks, Morse & Co.* (1933), 205 Ind. 316, 334, 185 N. E. 118. The court there said:

"The word 'encumber' ordinarily means 'to charge, or burden with financial obligations or mortgages.' There is no question of a mortgage involved and the pledge orders, when issued, will not be a lien on the plant, and the holders of the pledge orders can not look to the plant for payment, for each pledge order, when issued, shall contain the following language: 'This is not a general obligation of the town of Oxford, Indiana, but a special obligation payable only from the net revenue of the town's light and water plant,' and in this sense the net revenues may be encumbered, but this certainly does not have any relation to section 95 of the act, wherein it is said: 'No public utility . . . shall . . . encumber its franchise, works or system to any other persons, . . .' "

Fairbanks, Morse & Co., under its contract for the payment of the Diesel engine unit, looked only to the in-

come and revenue derived from the plant for its payment. It was not an obligation of the city of Crown Point, payable by taxation, and it was not a lien upon the plant itself. In addition to this, before the order of the public service commission was issued Fairbanks, Morse & Co. executed a release, by the terms of which the company transferred and fixed the unencumbered title to the property in the city of Crown Point. The trial court rightfully held that the water-works plant was unencumbered.

The Act under which the water-works revenue bonds were issued expressly provides that such bonds are to be paid from revenues derived from the operation of the plant. Such bonds are not an obligation of the city payable by taxation. The Act provides that the income and revenue shall be divided into three funds: (1) Operation and maintenance, (2) depreciation, and (3) payment of principal and interest on such bonds. All lawful disbursements of the revenues derived from the operation must fall into one of these three funds. The statue authorizes the common council of the city to provide by ordinance the percent of the revenues to be expended in each of said three funds. Acts 1929, Chapter 155, §4; §48-5331, Burns' Ind. St. 1933, §12773, Baldwin's 1934.

It will be noted that the amount to be distributed in each of the three classifications is a question for the common council of the city, and not one for the public service commission to determine. The Act does indicate that the public service commission shall not authorize water-works revenue bonds to be issued unless it is satisfied that the amount available for the payment of principal and interest will be sufficient for that purpose, and to that end the Act requires a fixed percentage of the income and revenues to be allocated to

the payment of principal and interest. The city council by resolutions set aside twenty-six per cent of the revenues for the redemption of bonds and interest. This amount was approved by both the commission and the trial court, and no reason is shown why such finding should be disturbed. The common council allocated seventy-two per cent of the income and revenue to the operation and maintenance fund. It is obvious that from time to time it will be necessary to replace, repair, and install various engines or units in the operation of such plant. This may include Diesel engines or other equipment.

The objection made by appellants that the city was indebted for the Diesel engine used at that time is unavailing as heretofore pointed out. But if the city did not own the Diesel engine, it is clear under the facts that it would be necessary to purchase the same with the proceeds of the bond issue involved herein, or pay the purchase price from the operation and maintenance fund.

As a further objection appellants contend that the city received the benefit of the revenues derived from the water-works plant as it existed at the time the order of the public service commission was made; that under the order and the finding of the court, the city will be deprived of that revenue for the reason that the old water-works plant, as well as the new additions and extensions, will be treated as one unit and all the revenues will be used for the payment of the new additions; that such pledging of the water-works revenues creates an indebtedness prohibited by the Constitution, unless the income derived from the old water-works system could be separated from the income derived from the additions, which should be used only and solely for the liquidation of the new indebtedness. The precise question is discussed in *Underwood* v. *Fair-*

*banks, Morse & Co., supra,* at pages 328, 329, and 330, and is decided adverse to appellant's contention.

Appellants claim that Chapter 155, Acts of 1929, and Chapter 254, Acts of 1933, are unconstitutional; that they permit a municipality to create an indebtedness in excess of two per cent of the value of the taxable property within the city, contrary to Section 1, Article 13, of the Constitution of Indiana. These statutes, as well as other statutes in this state, authorize certain cities owning and operating an unencumbered water-works plant to provide for extensions and additions to such plants, and to issue bonds payable from the revenues and receipts thereof. Appellants claim that no limitation is made on the amount of the bonds which may be issued for that purpose, and thereby that Article of the Constitution is violated.

Appellants further contend that Chapter 259, Acts of 1933, also contravenes said Section 1, Article 13, of the Constitution. It appears, however, that this proceeding was instituted before the public service commission and was based upon Chapters 155 and 254 respectively and not upon Chapter 259. It is provided in the order of the public service commission, as well as in the statute itself, that the bonds to be issued were payable solely from the revenues of said water-works plant, and that they were not and will not constitute a lien on said water-works plant, or an obligation on the city of Crown Point.

Section 10, Chapter 155, Acts of 1929, as amended by Section 3, Chapter 254, Acts of 1933, provides that:

"And such bonds and the interest thereon issued against any such redemption fund shall be a valid claim of the holders thereof only against the said special redemption fund and the fixed proportion or amount of the revenues pledged to such fund, and shall not constitute an indebtedness of such city,

. . . within the meaning of the constitutional provisions and limitations."

The Act also provides that each bond shall state upon its face that it is payable only from a special fund, and that it does not constitute an indebtedness of such city. Such statutes, as well as contracts entered into by municipalities, providing that an indebtedness shall be paid from a particular fund, have been upheld many times where the fund used to pay the bonds was not raised by taxation, but the bonds were payable from the revenues derived from the operation of the plant. The latest authority in this state upon that subject is the case of *Underwood* v. *Fairbanks, Morse & Co., supra.* In that case the town of Oxford owned its own water and light plant and desired to purchase certain engines, pumps, generators, and appliances. It entered into a contract for the purchase of Diesel engines ánd other equipment, for the payment of which it issued pledge orders payable from the revenues derived from the operation of the municipal light and water plants. It was provided that the indebtedness to be created was not a general obligation of the town of Oxford, but was a special obligation payable only from the revenues derived from said plants. The court there held that although the indebtedness created exceeded the two per cent constitutional limitation, the contract was valid, for the reason that the plege orders were not obligations of the town and were not payable from taxes or the general funds of the town.

There are many other decisions in this state upohlding the same principle. *City of LaPorte* v. *The Gamewell Co.* (1896), 146 Ind. 466, 45 N. E. 588, 35 L. R. A. 686, 58 Am. St. Rep. 359; *Quill* v. *City of Indianapolis* (1890), 124 Ind. 292, 23 N. E. 788, 7 L. R. A. 681; *Ward* v. *City of Chicago* (1930), 342 Ill. 167, 173 N. E. 810, 812; *Town of Gosport* v. *Pritchard* (1901), 156 Ind. 400,

59 N. E. 1058; *Fox* v. *City of Bicknell* (1923), 193 Ind. 537, 141 N. E. 222.

Since the contract entered into by the town of Oxford, as discussed in *Underwood* v. *Fairbanks, Morse & Co., supra,* was executed, special statutes have been enacted explicitly authorizing municipalities to enter into contracts for the purchase of water-works equipment, the extension and repair thereof, and to issue bonds payable from the revenues thereof, kept in a separate fund expressly for that purpose. Even without these statutes this court consistently held that municipalities had inherent authority to make such improvements as those contemplated in the instant case, and to provide for the general welfare and health of their citizens. Such powers are not strictly confined, but are liberally construed for the purpose of permitting a municipality to provide for the welfare, health, comfort, and protection of its inhabitants.

Appellants complain that the water-works plant, together with the additional extensions provided for, will be unreasonably large and will provide a greater supply of water than is needed by the inhabitants of the city, and for that reason the bond issue as well as the contract should be condemned. Both the commission and the lower court found against the appellants upon this proposition. There is no evidence in the record as far as this court is able to determine to sustain the appellants' position. The common council of the city of Crown Point duly considered the possible growth and extension of the city, the necessity of having ready service of water at all times, the needs and requirements of the population, the domestic and commercial demands, and knew that at certain times and in certain seasons of the year the peak load would be great; that emergencies caused by fire do arise; and that it was important to have a water-works plant amply adequate for

emergency calls upon all occasions. This was a matter largely within the discretion of the local authority, and in the absence of fraud or gross abuse of discretion, is not a matter subject to review by this court. The presumption of good faith must be extended to the order of the public service commission until the contrary is made to appear by a preponderance of the evidence. *Public Service Commission* v. *City of LaPorte, supra.*

Objection is made by appellant to the fact that the specifications provided for the installation of a Diesel engine unit for the purpose of generating electrical energy. It is contended that the designation of the "Diesel" engine violated Section 48-1904, Burns' Ind. St. 1933, in that one concern only could possibly be a successful bidder, and that was Fairbanks, Morse & Co., to whom the contract was awarded. The term "Diesel" refers to a type of internal combustion engines in which the explosion is produced without the aid of an electrical spark. It is a general term and is used to describe the engine as the word "steam" is used in describing a steam engine. It is a matter of common knowledge that Diesel engines are manufactured by different persons and companies in many cities in this country. There is no showing made by the appellants that any bidders were excluded from the bidding on account of the designation of a Diesel engine. The record does not contain any evidence that other manufacturers of Diesel engines were unable to bid or did not bid. No legal objection is shown to the designation in plans and specifications of the term "Diesel" engine.

Lastly, the appellants assert that Chapter 190, Acts of 1933, is unconstitutional and violates Section 1 of the 14th Amendment to the United States Constitution, and Section 23 of Article 1 of the state Constitution. This court is not called upon to determine that question for the reason that that chapter is

not involved in this action and is not before the court. The proceedings before the public service commission were had under the provisions of Chapter 155, Acts of 1929, as amended by Chapter 254, Acts of 1933.

The motion to dismiss the appeal is overruled, and the judgement of the lower court is affirmed.