PROPERTY OWNERS, INC. ET AL. *v.* CITY OF
ANDERSON ET AL.

[No. 28,767.   Filed July 23, 1952.]

80

*George R. Jeffrey* and *George B. Jeffrey,* both of Indianapolis; and *Grace B. DeArmond,* of Anderson, for appellants.

*P. B. O'Neill,* City Attorney of City of Anderson; *Philip Welsh,* of Anderson; and *Clyde H. Jones* (of counsel), of Indianapolis, for appellees.

JASPER, C. J.—This is an appeal from a judgment denying a permanent injunction. Appellants filed their complaint in five paragraphs to enjoin appellees from issuing and selling Electric Revenue Bonds authorized by ordinance. Appellees filed a demurrer to the fourth and fifth paragraphs of complaint, which demurrer was sustained. An answer under our Rule 1-3 was filed to the first two paragraphs, and the parties in the trial court proceeded to trial on those paragraphs and the third paragraph on the theory that all allegations of the latter had been denied. Special findings of fact and conclusions of law were requested. Judgment was entered by the trial court upon the conclusions of law, denying appellants' prayer for a permanent injunction.

Appellee, City of Anderson, has been operating a municipal light plant for the manufacture and distribution of electric light and power since the year 1896 up to and including the present time. From time to time, the City of Anderson has increased the size of its electric plant by the erection of additional buildings, the last of which was in the year 1943. Electricity is sold to both private and commercial users. The present plant is obsolete, and Ordinance No. 1825 of the City of Anderson was enacted, authorizing the issuance of Electric Revenue Bonds of the City of Anderson in the amount of $6,500,000, for the purpose of constructing extensions and additions to the municipal electric system. On March 31, 1949, a special session of the City Council was called and held in the Mayor's office. All members of the City Council were present, and Ordinance No. 1825 was introduced and given its

first reading. Upon unanimous vote, the rules were suspended and the ordinance was advanced to second reading, and was read by title only. By unanimous vote, a special meeting was set for April 5, 1949, at 7:30 p. m., for final action on the ordinance. On April 5, 1949, the Council met in the Council Chambers, in the City Hall of Anderson, and the ordinance was read for the third time and unanimously adopted. On April 5, 1949, some of the citizens protested the passage of the ordinance, requesting additional time. On June 9, 1949, appellee, City of Anderson, filed with the Public Service Commission its petition to fix additional rates and for authority to issue revenue bonds. Notice of a public hearing on the petition was given, a hearing was held, and the Public Service Commission authorized the issuance of Electric Revenue Bonds in the sum of $6,-500,000, and further authorized an increase of rates to be charged the users of electricity. The order of the Public Service Commission was not appealed. On October 15, 1949, appellant, Property Owners, Inc., along with another, filed a complaint in the Superior Court of Madison County to enjoin the enforcement of the order of the Public Service Commission. A plea in abatement was filed, to which plaintiffs filed a demurrer. The demurrer was overruled, and judgment was entered for the defendant, Public Service Commission. This judgment was not appealed. Appellants then filed the case at bar.

Appellants assign as their first two grounds of error the sustaining of appellees' demurrer to their paragraphs four and five of complaint. Their third assignment of error alleges that the trial court erred in each of the third, fourth, fifth, sixth, seventh, and eighth conclusions of law. An assignment of error to a conclusion of law admits the correctness

of the special findings of fact, and that they are full, complete, and true. *Edmundson* v. *Friedell* (1928), 199 Ind. 582, 159 N. E. 428. Their fourth assignment alleges error of the trial court in overruling their motion for a new trial.

Appellees contend that the third assignment of error is a joint assignment and does not comply with Rule 2-6 of this court, which provides that each assignment shall be separately stated and numbered. Appellants' third assignment of error is as follows:

> "The trial court erred in each of the third, fourth, fifth, sixth, seventh and eighth conclusions of law."

Our Rule 2-6 reads as follows:

> "There shall be attached to the front of the transcript . . . a specific assignment of the errors relied upon by the appellant in which each specification of error shall be complete and separately numbered . . . ."

Under our rule, if errors are not separately assigned, we will consider them as being jointly assigned. In the case at bar, appellants, by assigning error to *each* of the conclusions of law, thereby made a separate assignment to each conclusion. *State ex rel. Johnson* v. *Boyd*, v. *Viets*, v. *Krack* (1940), 217 Ind. 348, 362, 28 N. E. 2d 256. The third assignment of error was sufficient to comply with our Rule 2-6.

Appellants' assignment of errors numbered one and two raise identical questions and will be grouped together.

Appellants contend that the Municipal Electric Revenue Bonds are invalid, as being in violation of Section 1, Article 13, of the Constitution of Indiana, which provides, in part, as follows:

"No political or municipal corporation in this State shall ever become indebted in any manner or for any purpose to an amount in the aggregate exceeding two per centum on the value of the taxable property within such corporation, to be ascertained by the last assessment for State and county taxes, previous to the incurring of such indebtedness; and all bonds or obligations, in excess of such amount, given by such corporations, shall be void. . . ."

Section 54-611, Burns' 1951 Replacement, provides in part, as follows:

"(a) To provide for the payment of any utility purchased, acquired or constructed under this act, or the extension, replacement, in whole or in part, or the repair thereof, the said municipal council shall be, and is hereby authorized to issue and sell bonds, as herein defined, bearing interest at a rate not exceeding six [6] per cent per anum, executed in such manner and payable at such times not exceeding forty [40] years from the date thereof, and at such places as the municipal council shall determine, which bonds shall be payable *only out of the special fund heretofore provided.* . . . Any such bonds so issued and the interest thereon shall be a valid claim only against the said special fund, and said bonds shall not constitute an indebtedness of such municipality within the meaning of the constitutional provisions and limitations. . . . (My italics.)

"(b) Said municipal council shall have full power to adopt all ordinances and to take such other steps as may be necessary to carry into effect the provisions of this act, which ordinances may contain such provisions and stipulations for the administration and protection of such special funds as such municipal council shall deem necessary, and to include such ordinances as may be necessary to provide for the operation and management of the utility owned by such municipality."

It is well settled that Municipal Electric Revenue Bonds are not a general debt or obligation of a city, but a debt of the city payable only out of a special fund, and in no sense is such debt payable out of funds to be raised by taxation or out of the general fund, which would bring the bonds within the prohibition of Section 1, Article 13, of the Constitution of Indiana. *Letz Mfg. Co.* v. *Public Service Commission of Ind.* (1936), 210 Ind. 467, 4 N. E. 2d 194; *Underwood* v. *Fairbanks, Morse & Co.* (1933), 205 Ind. 316, 185 N. E. 118; *City of LaPorte* v. *The Gamewell Fire Alarm Telegraph Co.*[1] (1896), 146 Ind. 466, 45 N. E. 588; *Fox* v. *City of Bicknell* (1923), 193 Ind. 537, 141 N. E. 222.

Appellants further contend that the ordinance is invalid and unconstitutional because it created a debt of the City of Anderson in excess of its constitutional debt limit, and the bonds are, in substance, secured by a mortgage on the property of the City of Anderson.

Appellants contend that Section 8 of the Ordinance, which provides, in part, as follows:

". . . and the city hereby irrevocably covenants, binds and obligates itself not to sell, lease, mortgage or in any manner dispose of said system, including any and all extensions and additions that may be made thereto, until all the bonds herein authorized to be issued shall have been paid in full, both principal and interest, or unless and until legal and sufficient provision for such payment shall have been made . . .,"

amounts to placing a mortgage upon the existing electric utility. With this we cannot agree. The last-cited section of the ordinance in no manner created a lien against the municipal utility property,

---

[1] See same case, 102 F. 417, for *ultra vires* contract—remedy of party in equity.

and the property was not, under the ordinance, pledged to secure the debt. The last-cited section of the ordinance, in substance, provides that ownership of the municipal light plant would remain in the City of Anderson. The property was not pledged or mortgaged to secure the bonds.

Appellants further contend, under their assignment of errors one and two, that section 9 of the ordinance creates a general debt of the City of Anderson. This section provides:

"That for the further protection of the holders of the bonds herein authorized to be issued and the coupons thereto attached, any holder of said bonds or any of the coupons, may either at law or in equity, by suit, action, mandamus or other proceeding, enforce and compel performance of all duties imposed by law and this ordinance, including the making and collecting of sufficient rates and segregation of the income and revenues and the application thereof.

"If there be any default in the payment of the principal of or interest on any of said bonds, then upon the filing of suit by any holder of said bonds or of any of the coupons, any court having jurisdiction of the action may appoint a receiver to administer said system on behalf of the city with power to charge and collect rates sufficient to provide for the payment of any bonds or obligation outstanding against said system, and for the payment of the operating expenses, and to apply the income and revenues in conformity with this ordinance and the provisions of the laws of Indiana."

Section 54-611 (b), Burns' 1951 Replacement, heretofore set out, provides, among other things, that a municipality, by ordinance, may make provision for the administration and protection of the special funds, and may provide for the operation and management of the utility. The ordinance

merely provides for the administration and protection of the fund in accordance with this subsection of the statute. The fact that the ordinance provides for the appointment of a receiver to charge and collect rates sufficient to pay the bonds in no manner pledges or mortgages the property of the municipality in such a manner as to create a general debt payable out of the general fund or by taxation. In so far as rates to be charged by the municipal utility are concerned, they are controlled by statute and must be approved by the Public Service Commission, §54-613, Burns' 1951 Replacement; and the payment of charges for electricity is not taxation. *City of Logansport* v. *Public Service Comm.* (1931), 202 Ind. 523, 177 N. E. 249, 76 A. L. R. 838. Further, section 9 of the ordinance, in clear and concise language, states that the bonds are a debt of the city, payable only out of the special funds; and the fact that the ordinance and bonds proposed to be issued provide that "the city agrees to pay" must be read with the ordinance as a whole and the provisions of the bonds as a whole. In the light of this, the City of Anderson agreed to pay the bonds and interest only from the revenue of the municipal utility, and further provided that the bonds would not be a debt of the city. The bonds could not be paid from taxes or the general fund. §54-611, Burns' 1951 Replacement. They are a valid claim against the special funds only, and not an indebtedness within Article 13, Section 1, of the Constitution of Indiana. *Letz Mfg. Co.* v. *Public Service Commission of Ind.* (1936), 210 Ind. 467, 4 N. E. 2d 194, *supra*. The demurrer to paragraphs four and five of appellants' complaint was properly sustained.

Appellants further contend that Ordinance No. 1825 of the City of Anderson was not read in full at a public meeting, and that the only time it was read in full was

at a secret meeting in the Mayor's office, and that therefore the ordinance is invalid. Section 48-1402, Burns' 1950 Replacement, provides as follows:

"The members-elect of the common council of every city shall hold their first regular meeting on the first Monday in January after their election, at the hour of 7:30 p.m., in the council chamber. The council shall thereafter meet at least once a month, and as much oftener as the rules may require. Special meetings shall be held on the call of the mayor, or on such other call as may be provided for by the rules. A majority of all the members-elect shall constitute a quorum. It shall require a majority vote of all the members-elect to pass an ordinance. Whenever, in this act, it is required that any ordinance or resolution shall be passed or other action of the council taken by a two-thirds vote, such requirement shall be construed to mean a two-thirds vote of all the members-elect. All meetings of the common council shall be public."

The last-cited statute does not make it illegal for the Council to meet in the Mayor's office as long as the meeting is open to the public. This section requires only that the first regular meeting on the first Monday in January after the election of the common council shall be held in the council chamber. The Legislature thereafter provided that all meetings must be public, but in no manner enjoined the council to meet only in the council chamber. Whether or not the meeting was open to the public was a question of fact for the trial court. The burden was upon appellants, and they failed to sustain the burden of proof. The court found against appellants, and we cannot weigh the evidence. *City of Huntington* v. *Northern Ind. Power Co.* (1937), 211 Ind. 502, 5 N. E. 2d 889, 6 N. E. 2d 335. There is sufficient evidence of probative value that the meeting was a specially-called

meeting, held in the Mayor's office and open to the public.

The evidence further reveals that the ordinance was read in full at the first meeting, and then, at the same meeting, under suspension of the rules, was advanced to second reading and read by title only. A motion was then unanimously adopted and carried that the council was to meet on April 5, 1949, at 7:30 p. m., for final action on the ordinance. The April 5th meeting was given publicity in a newspaper published in the City of Anderson. On April 5th, at the hour stated, the meeting was held, the public attended, and the ordinance was read for the third time, and, by unanimous vote, was adopted. The adoption of the ordinance complied with the statutes and the Constitution of the State of Indiana. It was not invalid.

Appellants next contend that the evidence showed fraud on the part of appellees in their plan for the financing and construction of the utility. This court has often said that fraud will not be presumed; that it must be proved. Fraud is a question of fact for the trial court. The finding being against appellants, and they having the burden of proof, we therefore examine the evidence only for the purpose of ascertaining whether the uncontradicted evidence required a finding in favor of appellants. After examining the evidence, we find that such a situation is not disclosed, and therefore the finding was not contrary to law.

Appellants further contend that the trial court erred in the seventh conclusion of law, which is as follows:

"That it was not necessary to submit the proposed construction, or issuance of revenue bonds on account thereof, to the voters of the City of Anderson."

Section 48-7201, Burns' 1950 Replacement, provides in part, as follows:

"Any city or town may erect or construct water-works, gas-works, electric light works, heating, steam and power plants, or combination of such utilities, together with all buildings, lines and accessories necessary thereto, and may purchase or lease any such works and utilities already constructed, or in course of construction and owned by any other person; and may also purchase, condemn or lease other lands for said purposes; *and may also extend, change and improve such works and utilities* when so acquired, and may also lease any such works or utilities owned by the city or town to any other person, all for the purpose of furnishing the inhabitants of such city or town and vicinity thereof with the use and convenience of any or all of such utilities: Provided, *That before any city or town shall enter upon the policy of erecting and constructing any such new works and utilities, or the purchase of the same from other persons*, or the lease of any such works or utilities owned by the city or town to any other person, the common council of such city or the board of trustees of such town, as the case may be, shall adopt a resolution, designated by number, declaring the necessity for entering upon the policy of such erection and construction, or purchase or lease. *In case of the proposed erection and construction of new works, said declaratory resolution shall fix the general character and the probable maximum cost thereof;* and in case of the purchase of such works from other persons, or the lease of any such works or utilities owned by the city or town to any other person, such common council or board of trustees shall first procure an option from the owners of such works agreeing to sell the same upon the terms of a definite proposed contract of sale or a definite proposed contract for the lease of any such works or utilities owned by such city or town to any other person, upon approval thereof by popular vote, and a full copy of said proposed contract of sale or lease shall be incorporated in, and made a part of, said declara-

tory resolution. *Before such declaratory resolution is confirmed and the policy thereof entered upon, said common council or board of trustees shall submit the same to the qualified voters of such city or town, at a special or general election,* of which election previous notice shall be given by publication once each week for two [2] weeks in some newspaper printed and of general circulation in such city or town . . ." (Our italics.)

Appellants, under this assignment of error, contend that this is such new construction as comes within the last-cited section. Appellees, however, contend that this is only an extension, addition, and replacement to the present municipal utility, and need not be submitted to the vote of the citizens of the City of Anderson.

The Legislature amended the last-cited section in 1911 (Acts 1911, Chapter 229, Section 2) by deleting the word "extension," and by providing that any city or town may erect or construct electric light works and power plants, or condemn such utilities, and that they may also extend, change, and improve such works and utilities. Provided, however, that before any city or town shall enter upon the *policy* of erecting and constructing any such new works and utilities, the common council shall adopt a resolution declaring the necessity for entering upon the policy of such erection and construction, and that the resolution shall fix the general character and the probable maximum cost thereof; and that before the *"resolution is confirmed and the policy thereof entered upon,"* the same shall be submitted to the qualified voters of such city or town.

The last-cited section of the statute does not apply to the present extension and addition to the City of Anderson municipal utility, for the reason that the City of Anderson had *entered on the policy of owning and operating a municipal utility in 1896,*

and it was not necessary to submit a declaratory resolution to the vote of the people of the City of Anderson. *Indiana Service Corp.* v. *Town of Warren* (1934), 206 Ind. 384, 189 N. E. 623.[2] Findings of fact thirteen through thirty-five, inclusive, indicate clearly that this is not such new construction as requires the vote of the people, and the City of Anderson was not now entering upon the policy of municipal-utility ownership. The evidence shows that the municipal utility plant was obsolete and antiquated, and that the construction as contemplated was an extension and addition to the plant, retaining the old plant for use on a stand-by basis. We feel that the construction and work to be done under Ordinance No. 1825 and the revenue bonds to be issued by the City of Anderson were permissible under the provisions of §48-7201, Burns' 1950 Replacement. Extensions, additions, or replacements to municipal utilities were not subject to being submitted to the vote of the people. Extensions and additions to the utility were a discretionary matter for the council's determination.

In the case of *Indiana Service Corp.* v. *Town of Warren, supra,* the court said (pp. 392, 393 of 206 Ind., pp. 526, 527 of 189 N. E.) :

> "In our opinion, the evident purpose of the General Assembly in 1911, in rewriting §249, *supra,* was to change its provisions *so as to make it no longer necessary, in case of town-owned water or electric light plants, to submit the question of extensions, changes, and improvements thereto to the voters at a special or general election, as was required by the original text of the act.* Applying this conclusion to the facts of the instant case, it appears that for many years prior to March, 1925,

---

[2] See *Slepicka* v. *City of Wilber* (1948), 150 Neb. 376, 34 N. W. 2d 646, and *Nacke* v. *City of Hebron* (1952), 155 Neb. 739, 53 N. W. 2d 564.

the town of Warren had been operating water works and an electric light plant, both public utilities, and was so operating them at the time the contract here in suit was executed. It is true that from March, 1925, to March, 1930, it purchased electricity from appellant for power and for resale to its customers, but that transaction alone would not make it any the less a utility operator, for, as we have seen, during all of that time and for many years prior thereto, it was continuously in possession, control, and had the business management of both plants. *Whether, under the statute, a town may adopt municipal ownership of utilities seems to be a question of policy to be determined by an election. But, having once entered into the business, as here shown, an election is not necessary for the purpose of deciding an engineering choice as to the type of equipment that shall be originally installed, or for necessary replacements because of inefficiency or obsoleteness.* The board of trustees of the town must, of necessity, be and they are authorized to exercise a business discretion in the management, operation and maintenance of the utility entrusted to their care." (Our italics.)

In *Keokuk Waterworks Co.* v. *Keokuk* (1938), 224 Iowa 718, 733, 277 N. W. 291, 300, the court, in discussing the duality of the provision "acquiring or constructing waterworks," said:

"On the proposition of duality, urged by appellants . . . courts are not in accord, but the decided weight of authority is against the appellants' contention. The majority rule is well stated in the case of State v. Snyder, 129 Ohio St. 206, 194 N. E. 415, 416, as follows:

" 'According to the great weight of authority, expressions such as the one involved here do not express duality of purpose . . . (Citing cases.) The reasoning of these cases is in substance that the purpose is the single one of establishing municipal ownership of a public utility, and that the method of acquirement, whether by purchase or construction, relates only to the means . . .' "

The City of Anderson will be operating a municipal utility whether it manufactures electricity or purchases it from a private company for resale. It was not necessary to submit a declaratory resolution for the extension, replacement, or addition to the electric power plant to the vote of the citizens of the City of Anderson.

Appellees have assigned cross-errors under our Rule 2-6. However, appellees ask us to affirm the judgment. The cause can be affirmed by disposing of the errors assigned by appellants. The court will therefore not consider and decide the questions presented by the assignment of cross-errors. *Baldwin* v. *Moroney* (1910), 173 Ind. 574, 584, 91 N. E. 3.

After considering all of the contentions of appellants, we find no error.

Judgment affirmed.

NOTE.—Reported in 107 N. E. 2d 3.