RAILROADS (§ 9*)—REGULATION—INDEBTEDNESS—APPROVAL BY PUBLIC SERVICE COMMISSION—"OTHER EVIDENCE OF INDEBTEDNESS."

Public Service Commissions Law (Laws 1907, c. 429) § 55, provides that any railroad corporation may issue stock, bonds, notes, or other evidence of indebtedness, payable at periods of more than 12 months after date, when necessary for certain enumerated purposes, provided it shall secure from the Public Service Commission an order authorizing such issue. The vice presidents of several railroad companies calling themselves in combination the "New York Central Lines," parties of the first part, entered into an agreement with a trust company, designated as trustee, and the six railroad companies designated as parties of the third part, by which the parties of the first part sold certain rolling stock to the trust company, and the trust company rented the same to the several railroad companies; such companies issuing certificates to the trust company to the amount of the purchase price of the equipment, payable in installments, and denominated as rent. The trust company was not to be liable on the certificates in any event. *Held* that, while the words "other evidence of indebtedness" as used in the statute refer to obligations of like character with stock, bonds, and notes, the trust certificates were substantially obligations of that character, and hence the issuance of the same must be sanctioned by the Public Service Commission.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 9.*

For other definitions, see Words and Phrases, vol. 6, p. 5080.]

Action by the People of the State of New York against the New York Central & Hudson River Railroad Company. Submission of controversy under Code Civ. Proc. § 1279. Judgment ordered against defendant.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

, Argued before SMITH, P. J., and KELLOGG, COCHRANE, SEWELL, and HOUGHTON, JJ.

Ledyard P. Hale, for plaintiff.

Albert H. Harris, for defendant.

SMITH, P. J.   This controversy involves the right of the plaintiff to recover against the defendant a penalty under section 56 of the public service commissions law (Laws 1907, c. 429).   By that section any common carrier subjects itself to a penalty not to exceed the sum of $5,000 for a violation of any of the requirements of the public service commissions law.

Defendant is charged with the violation of the provisions of section 55 of that law.   That section, so far as material to this controversy, reads as follows:

"Any common carrier, railroad corporation or street railroad corporation organized or existing or hereafter incorporated under or by virtue of the laws of the state of New York may issue stocks, bonds, notes or other evidence of indebtedness payable at periods of more than twelve months after the date thereof, when necessary for the acquisition of property, the construction, completion, extension or improvement of its facilities, or for the improvement or maintenance of its service or for the discharge or lawful refunding of its obligations, provided and not otherwise that there shall have been secured from the proper commission an order authorizing such issue to the amount thereof, and stating that in the opinion of the commission the use of the capital to be secured by the issue of such stock, bonds, notes or other evidence of indebtedness is reasonably required for the said purposes of the corporation.   *   *   *"

In 1907 the defendant, with its allied companies, required for its service rolling stock of the value of about $30,000,000.   This sum it was desired to pay in installments, running over a period of 15 years. To issue bonds or notes would confessedly have required the consent of the Public Service Commission under the provision of law above quoted.   The money, however, was raised in a different way.   An agreement was entered into between four persons, who were the vice presidents of six railway companies, calling themselves in combination "The New York Central Lines," as parties of the first part, the Guaranty Trust Company of New York, called the trustee, as party of the second part, and the said six railway companies as parties of the third part.   The agreement recited that these railroad companies desired equipment additions, and deemed it expedient to make provision therefor through the medium of an equipment trust.   It was then agreed on behalf of the parties of the first part that they would sell to the Guaranty Trust Company such rolling stock or equipment as should be requested by the presidents of the several railroad companies, parties of the third part.   Ten per cent. of the purchase price of said rolling stock was to be paid at once by the said railroad companies.   The remaining 90 per cent. was to be paid to said vendors by the delivery to them of equipment certificates, to be known as the "New York Central Lines Equipment Trust Certificates of 1907."   The Guaranty Trust Company, then with legal title to this rolling stock, rented the same to the several companies, parties of the third part, upon the agreement of the companies to pay in rental therefor:

"First. The cost of administering its trust under this trust agreement, the expense incurred by it under the leases made pursuant thereto, and proper compensation for its services under said agreement and leases.

"Second. All taxes, assessments, licenses and dues, federal, state and municipal, which may be levied upon or assessed against the equipment covered by the lease or against the trustee on account thereof.

"Third. The amount of the dividend warrants belonging to the certificates representing the cost of the equipment covered by lease as such warrants severally fall due.

"Fourth. An annual sum equal to the one-fifteenth of the principal of said certificates issued on account of the equipment covered by said lease."

The trustee thereupon covenanted to apply the rentals so by it to be received to the payment of said expenses, taxes, dividend warrants, and certificates, as they shall, respectively, fall due. It was further provided that the trustee should in no event be liable upon these certificates. Provision was made in case of default that the trustee should proceed to collect the said rentals in behalf of the certificate holders, and should, if necessary, enforce any lien that it might hold upon said equipment by reason of the title thereto reserved in itself upon the giving of the leases as security for the payment of these trust certificates. The railroad company indemnify the vendors against all expense. These trust certificates were so drawn as to entitle the holder to so many shares of $1,000 each in the New York Central Lines Equipment Trust of 1907, payable in gold coin upon a date certain, and also to the dividends thereon payable semiannually on the 1st days of May and November of each year in gold coin, at the rate of 5 per cent. per annum, as evidenced by the dividend warrants attached. These payments were to be made only from and out of rentals received under the aforesaid lease.

These trust certificates to the extent of 90 per cent. of the purchase price of this equipment, and not exceeding in the aggregate $30,000,-000, were delivered to the vendors by the Guaranty Trust Company, and by them placed upon the market and sold to the public, and the proceeds used in payment of the purchase price of this equipment, the title to which had been given by the said vendors to the Guaranty Trust Company.

The contention of the defendant is that no bonds, notes, or other evidences of indebtedness within the terms of section 55 of the public service commissions law have been issued by the companies, but simply a contract of lease, and that the trust certificates were not the obligations of the companies, but were the obligations of the Guaranty Trust Company, the issuance of which required no permission from the Public Service Commission. I agree that the words "other evidence of indebtedness," as stated in the statute, refer to obligations of like character with stock, bonds, and notes, and that a lease as such is not included therein. But these trust certificates are in their nature securities of like nature to stock, bonds, and notes, and, if under the agreements they are to be deemed the obligations of these railroad companies, their issuance without the permission of the Public Service Commission is in violation of law, and subjects the defendant and the other railroad companies to the penalty prescribed in section 56 of said law. In the trust certificates themselves it is provided that neither

the certificate nor dividend warrants attached thereto should be deemed in any wise the obligation or promise to pay of the trustee. No party is liable to pay those certificates except the railroad companies themselves. They have not promised to pay directly, but through the medium of the trustee, to which they pay the amounts due thereupon under the name of rentals, under a covenant that the trustee shall pay the same to the holders of these certificates. It would seem clear, therefore, that these trust certificates were the obligations of these companies and their obligations alone. If in case of default the trustee failed under the conditions of this agreement to collect these moneys, the certificate holders are themselves authorized to bring action for such purpose. Such protection is vouchsafed to them by the law itself as well as recognized specifically in the agreements made. To hold that by this device the railroad companies might escape the requirement of the approval of such securities by the Public Service Commission would be to annul the force of the statute. The defendant cannot accomplish by indirection through a fiscal agent what it has been forbidden by the statute to do directly.

It is of small assistance to refer to authorities in the determination of this issue. Other cases arising under other statutes differ so materially in the questions presented as to throw little light upon the controversy here. The object of this statute seems to be to protect the public and perhaps the stockholders of the corporations from the flotation of securities which are bought and sold in the open market which represent useless and unnecessary expenditure. The purchasers of these trust certificates are in need of the protection of the statute in the same degree as would be the purchasers of bonds and notes of the corporation. They have no additional security than they would have in the purchase of such bonds and notes, and in the ultimate analysis they have exactly the same obligation to be paid through a trustee instead of directly by the railroad companies.

As this controversy is submitted for the purpose of obtaining a construction of this law, the plaintiff's counsel asks only for a nominal penalty. I advise judgment against this defendant for the sum of $100, with costs.

Judgment ordered against defendant for sum of $100, with costs. All concur.