In the Matter of HONOLULU RAPID TRANSIT
COMPANY, LTD. Investigation of its Conveyances
of Air Rights over its Properties and Order to
Show Cause Why No Prior Approval was Obtained
from the Public Utilities Commission of said Conveyances

## No. 5227

MARCH 14, 1973

RICHARDSON, C.J., MARUMOTO, ABE,
LEVINSON AND KOBAYASHI, JJ.

OPINION OF THE COURT BY MARUMOTO, J.

Honolulu Rapid Transit Company, Ltd., hereafter referred to as HRT, is a public utility. As such it is subject to the provisions of HRS c. 269, regulating public utilities, among which is HRS § 269-19, which reads as follows:

"*No public utility corporation shall* sell, lease, assign, mortgage, or otherwise dispose of or *encumber* the whole or *any part of its* road, line, plant, system, or other *property necessary or useful in the performance of its duties to the public,* or any franchise or permit, or any right thereunder, nor by any means, directly or indirectly, merge or consolidate with any other public utility corporation *without first having secured from the public utilities commission an order authorizing it so to do. Every such* sale, lease, assignment, mortgage, disposition, *encumbrance,* merger, or consolidation, *made other than in accordance with the order of the commission shall be void.*" (Emphasis supplied to highlight language pertinent to this case.)

The public utilities commission mentioned in the quoted statutory provision is the Public Utilities Commission of the State of Hawaii, which will hereafter be referred to as PUC.

HRT owns several parcels of fee simple land in Honolulu, including:

(1) Parcels 4 and 6, area 98,294 square feet, shown on Tax Map 2-1-42 of the First Taxation Division; and

(2) Parcel 11, area 166,980 square feet, as shown on the same tax map.

Parcels 4 and 6 will hereafter be collectively referred to as Parcel 4. The parcels are contiguous to each other. They lie between South King Street and South Hotel Street on the waikiki side of the land owned by Honolulu, Limited, which abuts on Alapai Street.

Parcel 11 is between South Beretania Street and South Hotel Street, abuts on Alapai Street, and extends in a waikiki direction therefrom.

At all times pertinent to this case, HRT used Parcel 4 as a storage area for its busses, had its offices in a building on Parcel 11, and otherwise used Parcel 11 to store its busses and to do repair and maintenance work thereon.

In August 1970, without first obtaining an order from PUC authorizing it to do so, HRT leased to Honolulu, Limited, all air space above specified levels of Parcels 4 and 11, the levels being: 12 feet above the ground level with respect to all of Parcel 4; 18 feet above the ground level with respect to 30,000 square feet of Parcel 11; and 12 feet above the ground level with respect to the balance of Parcel 11. Honolulu, Limited, is a wholly owned subsidiary of HRT.

Originally, HRT and Honolulu, Limited, executed a single lease covering the air space above both parcels. The single lease was later replaced by two leases, one covering the air space above Parcel 4 and the other covering the air space above Parcel 11. Both leases run for 70 years from August 28, 1970, and permit the air space to be used for such purposes as may be permitted by the zoning laws of the City and County of Honolulu.

HRS § 269-7 empowers PUC to conduct an investigation, upon its own motion, regarding the compliance of a public utility with applicable State laws.

On January 8, 1971, PUC issued an order to HRT to produce the leases mentioned above, and to appear and show cause why it had not obtained the prior approval of the commission to the execution thereof and why those leases should not be declared void pursuant to HRS § 269-20.

HRT responded to the order by submitting copies of the mentioned leases to PUC, and filing a return dated January 20, 1971, in which it did the following:

(1) admitted that it had "conveyed certain of its air rights over its properties" without the prior approval of PUC;

(2) denied that such conveyance required prior PUC approval;

(3) denied that its failure to submit an application for PUC approval of such conveyance violated HRS § 269-19;

(4) admitted the authority of PUC to make an investigation regarding such conveyance under HRS § 269-7;

(5) denied the authority of PUC to require it to show cause why the leases should not be declared void;

(6) denied the authority of PUC to declare such leases void.

PUC held hearings on the order to show cause on April 20 and 21, 1971. At the hearings, HRT adduced evidence the sole object of which was to establish that the demised air space was not necessary or useful in the performance of its duties to the public.

At the conclusion of the hearings, the deputy attorney general, who acted as counsel for the staff of PUC, moved to declare the leases void on the ground that HRT failed to carry its burden of proof as to why it did not obtain the prior approval of PUC to their execution. PUC granted the motion. In connection with the granting of the motion, the chairman of PUC stated: "The ground or land upon which foundations for any building to be built by the air rights holder are necessary and useful for utility purposes. Respondent therefore should have sought and may hereafter seek approval of the commission. This commission rules that Section 269-19 Hawaii Revised Statutes is applicable and under the provisions of that section the leases are void."

Thereupon, counsel for HRT, without prejudice to the position of HRT that the leases in question did not come within the purview of HRS § 269-19, moved to amend the return to the order to show cause by adding to the prayer therein that the order be dismissed, an alternative prayer that PUC approve the leases; and further moved that the leases be approved upon the evidence adduced at the hearings on the order. PUC granted the motion to amend, but denied approval of the leases, after the following colloquy took place between its chairman and counsel for HRT:

"CHAIRMAN DOLIM: And you will rest on the evidence that you presented yesterday?

"MR. HODDICK: It would depend on, I would rest as far as my case-in-chief is concerned. It would depend on what was presented by the other side whether I would present any evidence to follow. * * *

"CHAIRMAN DOLIM: This is all the evidence that you will present then?

"MR. HODDICK: On the case-in-chief."

On April 26, 1971, PUC entered Decision and Order No. 2761, setting forth its final rulings in the case in four separate paragraphs, of which paragraphs 1 and 4 read as follows:

"1. The motion to declare that Respondent failed to show sufficient cause why it did not obtain prior approval of the conveyance is granted;

"2. * * * *

"3. * * * *

"4. The application for approval of the conveyance is denied."

Paragraphs 2 and 3 are concerned with matters which are not in issue on this appeal.

HRT filed a petition for reconsideration of the decision and order or for rehearing on May 11, 1971. The petition was denied by Order No. 2787, entered on June 18, 1971.

This case is before us on an appeal taken by HRT from Decision and Order No. 2761 and Order No. 2787.

The first question stated by HRT as a question for decision on this appeal is the following: "Is the PUC the tribunal which may declare void a transfer by a utility of an interest in property?"

That question obviously was prompted by the oral ruling of PUC granting the motion of staff counsel for a declaration of invalidity of the leases on the ground that HRT failed to carry its burden of proof as to why it did not obtain the prior approval of the commission to their execution.

HRT has devoted a considerable portion of its opening brief, and a considerable portion of its reply brief also, to the argument that PUC has no authority to declare the leases void. Likewise, a considerable portion of staff counsel's answering brief is devoted to the presentation of argument to the contrary. All of such effort is wasted effort.

Our function on this appeal is to review the orders appealed from. We are not required to consider, and as a matter of fact it is not proper for us to consider, any oral ruling of PUC not incorporated in the written orders from which this appeal has been taken. None of the rulings set forth in the orders appealed from contain a declaration of invalidity of the leases.

Paragraph 1 of Decision and Order No. 2761 merely declares that HRT failed to show sufficient cause why it did not obtain the prior approval of PUC to the execution of the leases, and does not contain any declaration of invalidity of the leases. It is a meaningless ruling in the light of Paragraph 4, which denies approval of the leases.

The effect of Paragraph 4 of Decision and Order No. 2761 is to render the leases void, provided the leases are subject to HRS § 269-19. Such invalidity results from the operation of the statute, not from any declaration of invalidity by PUC.

The sole question for decision on this appeal is the validity of Paragraph 4 of the Decision and Order No. 2761. The validity of that paragraph depends, first, on the applicability of HRS § 269-19 to the leases in question here; and, second, if HRS § 269-19 is applicable, on whether HRT presented to PUC sufficient evidence to entitle it to the requested approval of the leases.

The basic position of HRT is that HRS § 269-19 is not applicable here because the demised air space is property not necessary and useful in the performance of its duties to the public. That position is not well taken.

Under the common law, a landowner owns not only the surface of the land but everything below it to the center of the earth and above it to the sky, as stated in the Latin phrase: *Cujus est solum, ejus est usque ad coelum*. The advent of air navigation has resulted in the curtailment of the extent of surface owner's ownership under the common law, but still the landowner "owns at least as much of the space above the ground as he can occupy or use in connection with the land." *United States* v. *Causby*, 328 U.S. 256, 264 (1946).

Thus, the demised air space here is an integral part of Parcels 4 and 11. It is not separate property floating independently in the sky. The fallacy in HRT's position lies in treating the demised air space as property which exists independently and which may be conveyed completely detached from Parcels 4 and 11.

In considering the applicability of HRS § 269-19 to the leases here, the focus should not be on the demised air space as property necessary or useful in the performance of HRT's duties to the public; rather, the focus should be on whether the underlying lands, namely,

Parcels 4 and 11, are necessary or useful in that regard, and the effect of the leases upon HRT's performance of such duties.

Under the record in this case, there is no question that Parcels 4 and 11 are necessary or useful in the performance of HRT's duties to the public; that the leases constitute encumbrances upon those parcels; and that, as such encumbrances, the leases necessarily have some effect upon the performance of HRT's duties to the public. That being so, we hold that HRS § 269-19 is applicable here.

The consequence of the applicability of HRS § 269-19, as stated above, is that it requires HRT to obtain the approval of PUC to the execution of the leases.

In obtaining such approval, the burden is on HRT to show that the leases do not so encumber Parcels 4 and 11 as to interfere, at least in some significant manner, with the performance of its duties to the public. That is so because the purpose of a statute such as HRS § 269-19 is to safeguard the public interest. *Otter Tail Power Co.* v. *Clark,* 59 N.D. 320, 330, 229 N.W. 915, 919 (1930); *Hanlon* v. *Eshleman,* 169 Cal. 200, 200, 146 P. 656, 657 (1915).

PUC denied approval of the leases in this case on the ground that the evidence presented by HRT was insufficient to support the granting of the requested approval. The record supports PUC.

The quoted colloquy between PUC chairman and HRT counsel shows that HRT relied on the evidence adduced by it at the hearings on the order to show cause to support its request for approval of the leases. As stated earlier in this opinion, all of such evidence was directed to establishing that the demised air space was not necessary or useful in the performance of HRT's duties to the public.

There was nothing in the evidence adduced by HRT

at the hearings to justify approval of the leases in the light of the purpose of HRS § 269-19. On the contrary, the items of evidence which had any bearing on the question of approval of the leases required disapproval rather than approval. The illustrations set forth below will suffice to illustrate the point.

The record does not show that Honolulu, Limited, has any specific plan with regard to the use of the demised air space. Under the leases, Honolulu, Limited, may assign the leases, or sublet the demised premises in whole or in part, without the prior approval of HRT or without posting any bond, and HRT has no say in the use made of the demised premises so long as the use is one permitted by the zoning laws of the City and County of Honolulu.

The provision of the leases quoted below is particularly pregnant with possibility of substantial curtailment of the use of Parcels 4 and 11 by HRT in the performance of its duties to the public:

> "Lessor hereby grants to Lessee the right to run, use, maintain and repair columns, foundations, vehicular access ramps, pedestrian stairways and utility lines, including electric, gas, water and sewage, and other ancillary services from the improvements constructed in the demised air space at such locations as Lessor's architect may select, on, into, under and through the ground and any pavement or floor thereon underlying the demised air space and through the space (intervening space) between the said ground and the demised air space; provided, however, that the location of said supporting and ancillary services shall not be such as to substantially interfere with the Lessor's use in the regular course of its business of the said ground and intervening space and the ramps and stairways shall be so arranged as to connect with a public street or streets abutting the said ground underlying the demised air space. Lessor recognizes that said ramps, stairways, supporting and ancillary

services will partially intrude upon and prevent the use by it of said ground level."

We hold that PUC's denial of approval of the leases in Paragraph 4 of Decision and Order No. 2761 is proper.

In its petition for reconsideration of Decision and Order No. 2761, or for rehearing, HRT offered to present additional evidence relevant to the applicability of HRS § 269-19 but no evidence relevant to its request for approval of the leases. That being the case, PUC's denial of the petition for reconsideration or for rehearing was also proper.

Affirmed.

*Howard K. Hoddick (Anthony, Hoddick, Reinwald & O'Connor* of counsel) for appellant.

*Harry S. Y. Kim,* Deputy Attorney General *(George Pai,* Attorney General, with him on the brief) , for appellee.