WISCONSIN SOUTHERN GAS COMPANY, Respondent, v. PUBLIC SERVICE COMMISSION, Appellant.

*No. 100.    Argued February 27, 1973.—Decided March 27, 1973.*
(Also reported in 205 N. W. 2d 403.)

For the appellant the cause was argued by *William E. Torkelson*, public service commission chief counsel, with whom on the brief was *Robert W. Warren*, attorney general.

For the respondent there was a brief by *Aberg, Bell, Blake & Metzner* of Madison, and oral argument by *Hugh H. Bell.*

HANLEY, J. The sole issue on this appeal is whether a contract for the purchase of all of the outstanding stock of a corporation in installments extending over a period of several years is a "security" within the definition contained in sec. 184.01 (3), Stats.

Sec. 184.01 (3) provides as follows:

" *'Securities' means capital stock and evidences of indebtedness of a public service corporation,* not including, however, (a) any obligation of a public service corporation which is not a public utility as defined in the federal power act, falling due one year or less after its date and bearing date not later than the day of sale; or (b) any evidence of indebtedness of a public service corporation which is a public utility as defined in the federal power act, the issuance, renewal or assumption of which is exempt from sec. 204 (a) of the federal power act by the provisions of sec. 204 (e) thereof; or (c) any obligation issued to the United States of America in connection with loans for rural telephone facilities made pursuant to the rural electrification act of 1936, as amended, or (d) any securities issued by a corporation organized under ch. 185 for the purpose of furnishing telephone service in rural areas." (Emphasis added.)

On appeal, the PSC contends that it was error for the court to conclude that such a contract was not ". . . an

evidence of indebtedness . . . within the definition of 'securities' " as contained in sub. (3) above, and that because petitioner did not first obtain a certificate of authorization for the contract pursuant to sec. 184.03, Stats., it is void. The petitioner, on the other hand, argues that its installment contract with Fagan was not an "evidence of indebtedness" within the definition of "securities" as intended by the legislature.

In situations of this kind where one of several interpretations of a statute are possible, this court "must ascertain the legislative intention as disclosed by the language of the statute in relation to its scope, history, context, subject matter, and the object intended to be remedied or accomplished." *Scanlon v. Menasha* (1962), 16 Wis. 2d 437, 442, 114 N. W. 2d 791; *Perry Creek Cranberry Corp. v. Hopkins Agricultural Chemical Co.* (1966), 29 Wis. 2d 429, 435, 139 N. W. 2d 96. After so doing, we think that both of the trial court's conclusions are correct.

The general rule for judicial interpretation of statutes authorizing state regulation of the "securities" of public service corporations such as petitioner is set forth in 73 C. J. S., *Public Utilities,* pp. 1105, 1106, sec. 43 (b). It is there stated that "[s]uch statutes are to be reasonably construed and do not apply to transactions not clearly covered." Statutes similar to sec. 184.02 [1] which limit to a certain extent the right of a public service corporation to contract ". . . should receive a reasonable interpretation in the light of the purposes sought to be accom-

[1] "184.02 **Power of alienation, state control.** The power to create liens or mortgages on corporate property by public service corporations in this state, or to deed such property in trust, or to issue capital stock, is a special privilege, the right of supervision, regulation, restriction and control of which shall be vested in the state, and such power shall be exercised according to the provisions of these statutes."

plished by them, and, since they abridge to a certain extent . . . [the right] . . . no application thereof *not plainly warranted by the language used should be made.*" (Emphasis added.) 73 C. J. S., *Public Utilities*, pp. 1103, 1104, sec. 43 (a). Because the PSC contends that the power of petitioner to enter into an installment contract is really a "security" as defined in sec. 184.01 (3), we think the above rules are applicable to the case at bar.

In its written decision the trial court concluded that the legislature in using the phrase "evidences of indebtedness" in sec. 184.01 (3), Stats., "intended debt securities in the general nature of notes, bonds and debentures or possessing similar qualities to those instruments. . ." and not an installment contract of the type here involved.

The trial court evidently applied the doctrine of *ejusdem generis* which accomplishes the purpose of giving effect to both particular and general words as extending the provision of the statute to everything embraced within the class though not specifically named. *National Amusement Co. v. Department of Revenue* (1969), 41 Wis. 2d 261, 163 N. W. 2d 625; *State ex rel. Thompson v. Nash* (1965), 27 Wis. 2d 183, 133 N. W. 2d 769. "Evidences of indebtedness" in sec. 184.01 (3), Stats., is, therefore, a general descriptive term limited to things of likeness to the specific terms of stocks, bonds or notes.

The Ohio court of appeals in the case of *Red Star Transportation Co. v. Silverman* (1933), 44 Ohio App. 533, 186 N. E. 460, held that although a specific lease agreement was an indebtedness payable more than twelve months after its date, it was not an "evidence of indebtedness" within a statute which provided it was the duty of the commission to authorize ". . . such issues of stocks, bonds and other evidence of indebtedness. . ." The court, at page 537, stated:

"It certainly cannot be contended that this section is intended to apply to current operating expenses, such as a lease, or such as labor, or to contracts of employment which might not be completed within twelve months, or to articles of equipment bought under advantageous contract and to be delivered from time to time over a period longer than twelve months.

"This statute, in our judgment, was intended both for the protection of the utility, in the matter of proper capitalization, and for the protection of the investing public. The terms 'stocks, bonds, notes and other evidences of indebtedness' seem to us to have been intended to contemplate proper capitalization of the company, and not operating expenses, and the term 'other evidences of indebtedness' might be trust certificates or *any other form* of capital indebtedness not properly described as stocks, bonds or notes." (Emphasis added.)

The trial court reasoned that because of the continued use of the words "sale," "issue" and "price" throughout ch. 184, Stats., which, while totally consistent with debt securities as they are traditionally sold or negotiated to others to obtain capital, acquire property or refund existing indebtedness, are inconsistent with a general contract to purchase corporate stock. These provisions, secs. 184.01 (3), 184.04, 184.06 (1) and (2) and 184.07 support the court's contention that a contract of the kind involved in this case was never within the contemplation of the legislature when it initially adopted and thereafter amended what is now sec. 184.01 (3).

Counsel for the PSC concedes that had petitioner made a cash purchase of all of the stock there would be no grounds upon which to challenge the Fagan contract.

It is contended by the PSC that the public interest which ch. 184, Stats., seeks to protect might be circumvented if the "evidences of indebtedness" referred to in sec. 184.01 (3) were not construed to embrace the Fagan contract thus creating "an obvious loophole." The trial court considered this contention and expressed its sympathy to the argument that contracts of this nature

should be subject to the approval of the PSC. However, the trial court was convinced that the legislature did not by its enactment of sec. 184.01 (3) intend to classify simple contracts of purchase on a time basis as "securities." We agree with that conclusion. This court cannot by judicial decree engraft a separate provision for installment contracts onto sec. 184.01 (3). Any amendment of sec. 184.01 (3) should come from the legislature.

Counsel for the PSC contends that the trial court erred in giving weight to a certain portion of the opinion testimony of Mr. H. K. Harley who has his own securities business in Madison and who is a director of the petitioner. Harley had been called to give expert testimony at the hearing regarding whether a contract of the type entered into between the petitioner and Fagan was a security within the meaning of sec. 184.01 (3), Stats. The PSC objected to the testimony and although the objection was sustained by the examiner, the petitioner submitted an offer of proof wherein Harley testified that a contract of this type was not a "security" as understood in the securities business and that if it is any sort of an "evidence of indebtedness" it is definitely not a "security." Although the trial court chose to rely on the offer of proof of Harley's testimony, there is also in the record the testimony of Mr. Frederick C. Huebner, a staff member of the PSC and director of the utility accounts and finance department which is responsible for the administration of ch. 184. Huebner's testimony was almost directly to the opposite of that contained in petitioner's offer of Harley's testimony to the effect that the contract was both a "security" and an "evidence of indebtedness" within ch. 184. Although his testimony was also objected to as a conclusion on the intent of the legislature, the hearing examiner overruled the objection. Although both the testimony of Harley and Huebner are couched more in terms of what instruments normally include "securities" and "evidence of indebtedness," it

is clear that each of them was giving his own analysis of what the legislature intended to, as they applied to sec. 184.01 (3), be embraced within these terms. Since a legislator, let alone a private citizen, cannot testify as to what the intent of the legislature was in the passage of a particular statute, *Cartwright v. Sharpe* (1968), 40 Wis. 2d 494, 162 N. W. 2d 5, it would be error to rely on the testimony of either witness. To the extent that the trial court felt the testimony of Mr. Harley to be persuasive, it was in error. However, under the facts of this case, such error was harmless.

It is also contended by the PSC that the court erred in not affirming the determination made by it under the doctrine of the *Pabst Case.* The following rule was enunciated in *Pabst v. Department of Taxation* (1963), 19 Wis. 2d 313, 323, 324, 120 N. W. 2d 77:

"Nevertheless, in fields in which an agency has particular competence or expertise, the courts should not substitute their judgment for the agency's application of a particular statute to the found facts if a rational basis exists in law for the agency's interpretation and it does not conflict with the statute's legislative history, prior decisions of this court, or constitutional prohibitions."

Here, we think, the trial court determined correctly that the ruling of the PSC is not a rational interpretation of the statute because it disregards the legislative intent. In the enactment of ch. 184, Stats., the legislature has clearly indicated that the words "evidence of indebtedness" have reference to those instruments which are of a type generally associated with the word "security" and do not include a contract of purchase never intended to be issued or sold to others.

We conclude that the trial court was correct in holding that the Fagan agreement was not a security as defined in sec. 184.01 (3), Stats.

*By the Court.*—Judgment affirmed.