DIANA J. JONES, et al., Complainants-Appellants, *v.* HAWAIIAN
ELECTRIC COMPANY, INC., Respondent-Appellee

NO. 6433

DOCKET NO. 2703

JANUARY 25, 1982

RICHARDSON, C.J., LUM, NAKAMURA, JJ.,
AND RETIRED JUSTICES OGATA AND MENOR
ASSIGNED BY REASON OF VACANCIES

## OPINION OF THE COURT BY LUM, J.

This is an appeal brought by complainants, a group of electricity subscribers of appellee Hawaiian Electric Company (HECO), from an order of the Public Utilities Commission (PUC) dismissing a complaint filed by complainants which requested the PUC to disallow a lease agreement between HECO and the Trustees of Bernice Pauahi Bishop Estate (Bishop) covering property in Heeia Kea Valley, Kaneohe, Oahu. We have carefully examined the pertinent issues, and we conclude that the PUC was correct in dismissing the complaint.

### I.

On March 29, 1965, HECO entered into a lease agreement with Bishop for 219.057 acres of land for 30 years beginning October 1, 1964. The agreement also provided that HECO buy the property on September 30, 1994, or at an earlier date, by giving 10 days prior written notice to Bishop, at a cash price to be determined by multiplying the sum of $2,150,000 by an inflationary factor, but in any event, no less than $2,150,000. At the time HECO entered into

the lease agreement, HECO did not secure the prior approval of the PUC.

The complaint was filed on August 1, 1975, alleging, *inter alia,* that HECO's acquisition and holding of the property, either by lease or purchase, was a violation of its franchise to do business as a public utility, and that HECO's acquisition and holding of the property under a lease-purchase agreement required approval of the PUC. HECO filed an answer and motion to dismiss the complaint on August 25, 1975. At the PUC's request, the Public Utilities Division filed a memorandum on June 22, 1976, opposing HECO's motion to dismiss and concluding that the PUC should order an evidentiary hearing. The matter was argued before the PUC, and the PUC's decision and order which granted HECO's motion to dismiss the complaint was filed on October 27, 1976. Complainants then filed their notice of appeal to this court.

The issues raised on appeal are as follows: (1) Was the lease agreement an evidence of indebtedness under HRS § 269-17, which requires the approval of the PUC? (2) Was the lease agreement an encumbrance under HRS § 269-19, which requires the approval of the PUC? (3) Did HECO exceed the powers of its franchise by acquiring and holding the property at Heeia Kea? (4) Did the lease agreement affect HECO's rates? (5) Did the PUC fail to comply with HRS § 91-12 and PUC Rule 17.01, which require the PUC to make its findings reasonably clear? (6) Did the PUC violate its duty under HRS chapter 269 to protect the public interest? (7) Did the PUC err in dismissing the complaint without holding an evidentiary hearing?

II.

At the outset we note that our review of this case is limited by the Hawaii Administrative Procedure Act. HRS § 91-14(g)(5) (1976 & Supp. 1980) states:

> Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record . . . .

Under the clearly erroneous standard, the court will reverse an agency's findings if the court is left with a "definite and firm conviction that a mistake has been made." *Application of Kauai Electric Division of Citizens Utilities Company*, 60 Haw. 166, 186, 590 P.2d 524, 538 (1978); *DeFries v. Association of Owners, 999 Wilder*, 57 Haw. 296, 362, 555 P.2d 855, 859 (1976).

Once the PUC has made an order, the order carries a presumption of validity and one seeking to upset the order carries "the heavy burden of making a convincing showing that it is invalid because it is unjust and unreasonable in its consequences." *Federal Power Commission v. Hope Natural Gas Co.*, 320 U.S. 591, 602 (1944); *Application of Kauai Electric Division of Citizens Utilities Company, supra* at 187, 590 P.2d at 538.

Complainants contend that the lease agreement with the proviso to purchase the property is an "evidence of indebtedness" under HRS § 269-17 (1976), which provides in pertinent part that "[a] public utility corporation may, on securing the prior approval of the public utilities commission, and not otherwise, issue stocks and stock certificates, bonds, notes, and other *evidence of indebtedness*, payable at periods of more than twelve months after the date thereof. . . ." Hence, complainants urge that if the lease agreement is an "evidence of indebtedness," it is void because the PUC's prior approval was not obtained.

HRS chapter 269, which regulates the PUC, does not define the words in question; neither is there any Hawaii authority on this issue. We therefore consider other authorities on this issue.

In *Queen Management Corp. v. Wilder Transportation*, 40 Misc.2d 604, 243 N.Y.S.2d 261 (1963), the court held that a two-year lease of automobiles did not come within section 62 of the Public Service Law prohibiting omnibus corporations from issuing stocks, bonds, notes or other evidences of indebtedness payable for a period of more than twelve months without the consent of the Public Service Commission. Similarly, *Red Star Transp. Co. v. Silverman*, 44 Ohio App. 533, 186 N.E. 460 (1933), holds that a three-year lease of real estate is not an evidence of indebtedness under a statute similar to HRS § 269-17.[1]

*In re Independent Truckers, Inc.,* 212 F.Supp. 402 (D. Neb. 1963), involved the construction of a Nebraska statute similar to HRS § 269-17.[2] A common carrier purchased trucks and trailers and in connection therewith executed chattel mortgages and conditional sales contracts with maturities in excess of 12 months. No approval was obtained from the Nebraska State Railway Commission. The court held that the transactions were bona fide sales of equipment and were not in any sense loans or methods of generating capital and that consequently, the contracts and mortgages were not evidences of indebtedness.

In *Wisconsin Southern Gas Co. v. Public Service Commission,* 57 Wis.2d 643, 205 N.W.2d 403 (1973), the issue was whether a contract by a

---

[1] Section 614-53 of the General Code of Ohio in pertinent part provided:

A public utility or a railroad, as defined in this act, may, when authorized by order of the commission, and not otherwise, issue stocks, bonds, notes and other *evidences of indebtedness,* payable at periods of more than twelve months after date thereof, when necessary for the acquisition of property, the construction, completion, extension or improvement of its facilities or for the improvement or maintenance of its service, or for the reorganization or readjustment of its indebtedness and capitalization, or for the discharge or lawful refunding of its obligations, or for the reimbursement of moneys actually expended from income or from any other moneys in the treasury of the public utility or railroad not secured or obtained from the issue of stocks, bonds, notes or other evidences of indebtedness of such public utility or railroad within five years next prior to the filing of an application therefor as herein provided, or for any of the aforesaid purposes except maintenance of service and except replacements in cases where the applicant shall have kept its accounts and vouchers of such expenditures in such manner as to enable the commission to ascertain the amount of money so expended and the purposes for which said expenditure was made. (Emphasis added.)

[2] Section 75-704 of the Revised Statutes of Nebraska 1943, Reissue 1958, provided as follows:

A common carrier or public service corporation doing business in the State of Nebraska, may issue stocks, bonds, notes or other evidence of indebtedness, payable at periods of more than twelve months after the date thereof, when necessary for the acquisition of property, the construction, completion, extension or improvement of facilities, or for the improvement or maintenance of its service, or for the discharge or lawful refunding of its obligations; *Provided,* and not otherwise, there shall have been secured from the State Railway Commission an order authorizing such issue and the amount thereof, and stating that in the opinion of the commission the use of the capital to be secured by the issue of such stock, bonds, notes or other evidence of indebtedness is reasonably required for the said purposes of the corporation.

gas utility to purchase stock in installments over a period of years was a "security," which required as a condition precedent to issuance, a certificate of authority from the Public Service Commission. Wis. Stat. Ann. § 184.01(3) provided that: " '[s]ecurities' means capital stock and evidences of indebtedness of a public service corporation. . . ." The Wisconsin Supreme Court first noted that statutes of this nature should receive a reasonable interpretation in light of the purposes sought to be accomplished by them, and that no application thereof not plainly warranted by the language used should be made. *Id.* at 648-49, 205 N.W.2d at 406. The court stated that the words "evidence of indebtedness" have reference to those instruments which are of a type generally associated with the word "security" and do not include a contract of purchase never intended to be issued or sold to others. *Id.* at 652, 205 N.W.2d at 408. The court concluded that the agreement was neither an "evidence of indebtedness" nor a "security" and consequently, the certificate of authority from the Public Service Commission was not required.

However, these authorities are not dispositive of the issue raised since HECO also agreed to purchase the land at Heeia Kea on September 30, 1994 or on an earlier date of sale as HECO may elect by giving prior notice. The contract is executory, because the obligation of the contract relates to the future. *Wagstaff v. Peters,* 203 Kan. 108, 453 P.2d 120 (1969). Although HECO's obligation related to the future, the transaction was not a loan. In addition, the contract of purchase was never intended to be issued or sold to others and thus was not a method of generating capital. We therefore conclude that the PUC correctly interpreted the agreement as an executory contract which was not an evidence of indebtedness under HRS § 269-17.

Our conclusion is further supported by the rule of statutory construction of *ejusdem generis.* Under this established rule of statutory construction, where words of general description follow the enumeration of certain things, those words are restricted in their meaning to objects of like kind and character with those specified. *State v. Kahalewai,* 56 Haw. 481, 488, 541 P.2d 1020, 1025 (1975); *State v. Rackle,* 55 Haw. 531, 534, 523 P.2d 299, 302 (1974).[3]

---

[3] The rule of *ejusdem generis* has been applied to statutes similar to HRS § 269-17. Wisconsin Southern Gas Co. v. Public Service Commission, 57 Wis.2d 643, 205 N.W.2d 403 (1973); Re Washington Gas Light Co., 58 Pub. U. Rep. 3d 1 (1965).

Holding the rule of *ejusdem generis* applicable to HRS § 269-17, "evidence of indebtedness" is limited to things of like character to stocks and stock certificates, bonds and notes. Stocks and stock certificates, bonds and notes are usually issued as a means of raising funds for the purposes specified in HRS § 269-17 and become part of the capital structure of the public utility. The lease agreement is not a means of raising funds for the purchase of the Heeia Kea property and is not a part of the capital structure of HECO. Thus, the lease agreement is not of like character to a stock, bond or note.

The PUC's decision is also consistent with the principal purpose of HRS § 269-17. The Commission previously found that "the main object of the legislature in enacting § 104-16, RLH 1955 (now HRS § 269-17) was to establish and preserve a proper rate base for regulation of rates and service, and the immediate design thereunder was to limit not only the capital of the utility as represented by its stock but also its other obligations as far as they were designed to supplement equity capital by borrowings of a permanent character." *Re Honolulu Gas Co.*, 77 Pub. U. Rep. 3d 397, 400 (1968) (footnote omitted).

The lease agreement does not involve the issuance of stock or borrowings of a permanent nature designed to supplement equity capital. The agreement has no effect on the capital structure of HECO or on its utility expenses. Therefore, the legislature did not intend for the PUC to regulate such an agreement under HRS § 269-17.

Complainants cite *People v. County Transportation Co.*, 303 N.Y. 391, 103 N.E.2d 421 (1952), as their primary authority on the issue of evidence of indebtedness. The court held that a conditional sales contract to purchase buses over a period of years was an "evidence of indebtedness."

A conditional sales contract is a sale of property with possession passing to the buyer and retention of title by the seller until the buyer has fully performed all conditions contained in the contract, including payment of the price. *Grover v. Tindall*, 242 Cal. App.2d 427, 435, 51 Cal. Rptr. 617, 622 (1966). A lease is not a conditional sale unless it masks what is in reality a security transaction. *Re Washington Gas Light Co., supra* at 19. The inclusion of an option to purchase does not of itself make the lease one intended for security, and an agreement that upon compliance with the terms of the lease the lessee shall

become or has the option to become the owner of the property for no additional consideration or for a nominal consideration may make the lease one intended for security. *Id.* at 20. In addition, the fact that a lease is capitalized instead of expensed indicates that the lease is an evidence of indebtedness. *Id.* at 19.

We now examine whether there are any facts which would make the instant agreement an evidence of indebtedness. There is no provision which would make the lessee (HECO) become the owner of the property for no additional consideration or for a nominal consideration. On the contrary, HECO is bound to pay the purchase price of 2.15 million dollars plus an inflationary indexed amount. There is no option included in the agreement. The lease agreement is expensed and not capitalized by HECO. Since none of the facts point to the lease agreement being a conditional sale or security transaction, the agreement is not an evidence of indebtedness.

Complainants also cite *People v. New York Cent. & H. R. R. Co.,* 138 App. Div. 601, 123 N.Y.S. 125, *aff'd,* 199 N.Y. 539, 92 N.E. 1096 (1910), and *Re Washington Gas Light Co., supra,* as authority on this issue. We find both cases inapplicable.

In *People v. New York Cent. & H. R. Co., supra,* a railroad issued equipment trust certificates without the approval of the Public Service Commission. The court held that under a statute similar to HRS § 269-17,[4] the certificates were evidences of indebtedness which required the prior approval of the Public Service Commission. The equipment trust certificates, unlike the lease agreement in the instant case, were securities bought and sold on the open market.

---

[4] Section 55 of the Public Service Commissions Law (Laws 1907, c. 429) provided that:

Any common carrier, railroad corporation or street railroad corporation organized or existing or hereafter incorporated under or by virtue of the laws of the state of New York may issue stocks, bonds, notes or other evidence of indebtedness payable at periods of more than twelve months after the date thereof, when necessary for the acquisition of property, the construction, completion, extension or improvement of its facilities, or for the improvement or maintenance of its service or for the discharge or lawful refunding of its obligations, provided and not otherwise that there shall have been secured from the proper commission an order authorizing such issue to the amount thereof, and stating that in the opinion of the commission the use of the capital to be secured by the issue of such stock, bonds, notes or other evidence of indebtedness is reasonably required for the said purposes of the corporation. . . .

Consequently, the purchasers of the trust certificates needed the protection of the statute, while the instant case does not involve a purchaser in need of such protection.

In *Re Washington Gas Light Co., supra,* the Public Service Commission found that the agreement was not an evidence of indebtedness. Complainants point out that the agreement in that case did not involve an obligation to purchase at or before the end of the lease. Although the instant agreement contains an executory contract to purchase, that fact does not make the agreement an evidence of indebtedness.

In sum, we conclude that the lease agreement is not an evidence of indebtedness and that the rule of *ejusdem generis* and the legislative intent behind HRS § 269-17 support this conclusion. Accordingly, we hold that the PUC's conclusion that the agreement is not an evidence of indebtedness is not clearly erroneous. Thus, the PUC's dismissal of the complaint was justified as far as this allegation is concerned.

### III.

Complainants also contend that the lease agreement is an "encumbrance" within the meaning of HRS § 269-19 (1976) and hence void because PUC approval was not obtained. This section provides in pertinent part that:

> No public utility corporation shall sell, lease, assign, mortgage, or otherwise dispose of or encumber the whole or any part of its road, line, plant, system, or other property necessary or useful in the performance of its duties to the public . . . without first having secured from the public utilities commission an order authorizing it so to do.

Since the lease agreement is an unsecured contract, it creates no lien, charge or encumbrance on any of HECO's presently owned property. However, complainants have raised the question of whether future payments of lease rental or the purchase price could be considered an encumbrance.

*Underwood v. Fairbanks, Morse & Co.,* 205 Ind. 316, 185 N.E. 118 (1933), held that an unsecured obligation to make payments in the future is not an encumbrance. In *Underwood,* a town entered into a contract to purchase new equipment for its light and water plant

providing for the payment out of net revenues of the plant. The Indiana statute in *Underwood,* which required approval of the Public Service Commission before issuing certain evidences of indebtedness, is similar to HRS § 269-19.[5] The court said that the obligation was payable from the net revenues of the plant and "in this sense the net revenues may be encumbered, but this certainly does not have any relation to section 95 of the act. . . ." *Id.* at 124. The court also stated, "[t]he word 'encumber' ordinarily means 'to charge, or burden with financial obligations or mortgages' " and noted that there was no mortgage involved and that the pledge orders were not a lien on the plant. *Id.* at 124.

HECO is obligated to pay a significant sum for the lease and purchase of Heeia Kea. The PUC previously found that these rents must be absorbed by the stockholders and not the ratepayers. As in *Underwood,* this obligation to pay out of the net revenues does not bear any relation to HRS § 269-19. In addition, there is no mortgage involved and Bishop cannot look to any plant asset for payment. Thus, HECO's unsecured obligation to make payments in the future is not an encumbrance under HRS § 269-19 and the PUC was justified in dismissing the complaint with respect to this allegation.

Complainants further argue that the purpose of HRS § 269-19 is to protect the public interest and that the PUC has failed to protect the public interest because it did not examine into the agreement's effect on HECO's financial structure and on HECO's ability to serve its customers.

In *In re Honolulu Rapid Transit Co.,* 54 Haw. 402, 409, 507 P.2d 755, 759 (1973), we stated, "the purpose of a statute such as HRS § 269-19 is to safeguard the public interest." *See Otter Tail Power Co. v. Clark,* 59 N.D. 320, 229 N.W. 915 (1930).

The PUC noted that it had disallowed any expenses for the Heeia Kea property as a ratemaking expense and that the ratepayers have never been subjected to any expense for the lease agreement. (Decision and Order 4412, p. 7). It also noted that the Heeia Kea property

---

[5] Section 95 of the Indiana Public Service Commission Act (Burns' Ann. St. 1926, § 12767) provided that: "No public utility, as defined in section 1 of this act, shall sell, assign, transfer, lease, or encumber its franchise, works or system to any other person, partnership, or corporation . . . without the approval of the commission after hearing."

was not in HECO's rate base (pp. 8-9). In addition, the lease agreement does not involve the issuance of any stock or borrowings of a permanent nature designed to supplement equity capital of HECO. Thus, it has no effect on the financial structure of HECO.

Since the Heeia Kea property is being carried at no expense to the ratepayers and the agreement has no effect on the financial structure of HECO, the PUC did not fail to protect the public interest.

## IV.

Complainants further argue that the acquisition and holding of the Heeia Kea property pursuant to the lease agreement violates HECO's franchise, because the property was or is not necessary to the proper conduct of HECO's business, utility or otherwise. The PUC found no basis for this allegation.

Complainants have failed to show any specific statutory or franchise provision which prohibits HECO from purchasing, leasing or owning property that was or is not necessary for the proper conduct of HECO's business. HECO's franchise, which is contained in Volume 2, Revised Laws of Hawaii 1925, page 1980, as amended by Session Laws of 1961, Act 134, does not limit HECO's powers to acquire property other than the property or franchise of another utility.

HRS § 416-26(4) (1976 & Supp. 1980) provides that every corporation created in the state shall have the power, unless otherwise expressly limited or denied by its articles of association or charter, to hold, purchase and convey such property as the purposes of the corporation require.

HRS § 416-27 (1976) states, "[i]n addition to the powers enumerated in section 416-26 and in addition to the powers granted by any other statutory provisions, every corporation created under this chapter may possess and exercise any and all powers, not inconsistent with any existing law, set forth in its articles of association or charter or reasonably incidental to the fulfillment of its purpose or purposes as set forth in its articles of association or charter or reasonably incidental to the exercise of its powers as set forth therein."

In *Morita v. Public Utilities Commission*, 40 Haw. 579 (1954), we

held that the ownership of the special franchise to operate a street railway system does not prohibit the corporation from engaging in other corporate business or owning other franchises. The court stated, "[t]here is no rule of law that such a grantee, whether an individual, a corporation or a partnership, is thereby prohibited from all activities other than those authorized by the special franchise. It is common, if not customary, for public utilities to engage in businesses other than that authorized by the franchise." *Id.* at 590.

Complainants argue that section 11 of HECO's franchise prohibits HECO from holding property which was or is not necessary for the proper conduct of HECO's business. Section 11 provides:

> The said company shall have the right to acquire, hold, or take over, either by purchase or lease, property, both real, personal or mixed, and such other property as may be necessary or incidental to the proper conduct of its business; said company shall, however, not have the right to purchase franchises and property of whatever nature of another company of like nature.

2 R.L.H. 1925.

The franchise grants the right to acquire or hold property necessary for the business. It does not, as complainants contend, restrict or prohibit the acquiring or holding of other property, except franchises and property of another public utility company. Thus, HECO would not violate its franchise by acquiring and holding property which was not necessary for the proper conduct of its business.

Since HECO's franchise does not prohibit it from purchasing and leasing property not used for utility purposes, and a public utility is not prohibited from engaging in activities other than those authorized by its franchise, we conclude that the PUC's ruling that appellants' complaint did not show a violation of any franchise provision was not clearly erroneous. Thus, the PUC's dismissal of the complaint was justified with respect to the allegation of a violation of HECO's franchise.

## V.

Complainants' final contention with respect to the legal sufficiency of their complaint is that the lease agreement between HECO and Bishop affected the rates charged to utility users.

The PUC found in *Re Hawaiian Electric Co.,* 96 Pub. U. Rep. 3d 80

(1972), that HECO's rents for Heeia Kea must be absorbed by the stockholders and not the ratepayers. On the basis of this ruling, the PUC concluded that "ratepayers have never been subjected to any expenses of the lease agreement."

We conclude that the PUC's conclusion that this claim is legally insufficient is not clearly erroneous. Thus, the PUC was justified in finding a lack of legal sufficiency appearing on the face of the complaint.

## VI.

Complainants allege that the PUC did not state sufficiently clear findings in Decision and Order 4412, and hence violated HRS § 91-12 (1976) and PUC Rule 17.01. They also contend that the PUC failed to do its duty under HRS chapter 269 to protect the public interest. We find no merit in these contentions.

Complainants also contend that the PUC erred in dismissing the complaint without holding an evidentiary hearing.

HRS § 296-7 requires the PUC to conduct an investigation only when a sworn complaint is filed setting forth a prima facie cause of complaint. PUC Rule 3.02(f)(2) provides that the respondent may file a motion to dismiss a complaint because of lack of legal sufficiency appearing on the face of such complaint. Thus, the PUC has the discretion and authority to dismiss the complaint without a hearing or investigation.

In *National Labor Relations Board v. Union Bros., Inc.*, 403 F.2d 883 (4th Cir. 1968), the court upheld the granting by the NLRB of a motion for summary judgment (analogous to Rule 3.02 of the Rules of Practice and Procedure of the PUC) with respect to a complaint of an unfair labor practice. The court stated, "[i]f no substantial and material factual issue exists an evidentiary hearing is not required either at the representational stage or upon the complaint of an unfair labor practice." 403 F.2d at 887 n.5. *Also see United States v. Consolidated Mines & Smelting Co., Ltd.*, 455 F.2d 432 (9th Cir. 1971).

Complainants contend that an evidentiary hearing is required in order to dispose of significant factual questions. We find that there were no substantial and material factual issues, and consequently, the PUC had no reason to hold an evidentiary hearing. Therefore,

the PUC acted within its authority in denying an evidentiary hearing.

Affirmed.

*Kathleen A. Dashiell* (Legal Aid Society of Hawaii) for complainants-appellants.

*Marshall M. Goodsill (David L. Fairbanks* with him on the brief, *Goodsill Anderson & Quinn* of counsel) for respondent-appellee.